**FLORIDA CANADA CORPORATION,**
Appellant,

v.

**UNION CARBIDE & CARBON CORPO-
RATION,** Appellee.

No. 13903.

United States Court of Appeals
Sixth Circuit.

July 11, 1960.

Howell Van Auken, of Lucking, Van Auken & Miller, Detroit, Mich., for appellant, Lucking, Van Auken & Miller, Lawrence Rothenberg, Detroit, Mich., on the brief.

James K. Watkins, Detroit, Mich., for appellee, Milton F. Mallender, Detroit, Mich., on the brief.

Before CECIL and WEICK, Circuit Judges, and BROOKS, District Judge.

BROOKS, District Judge.

This is a civil action based on an alleged breach of contract. The appeal is from the award of a summary judgment.

The appellant, Florida Canada Corporation, formerly named Chemical Research Corporation, brought this action for an alleged breach of a contract between Gyro Process Company, a corporation now merged with appellant, hereinafter generally referred to as plaintiff, as first party, and Carbide and Carbon Chemicals Corporation, now the appellee Union Carbide Corporation, hereinafter

generally referred to as defendant, as second party. This contract was entered into on November 1, 1943, in settlement of litigation pending between the parties arising from a licensing agreement dated September 17, 1927, which granted a license to the defendant to use the Gyro Process. The Gyro Process is a patented process for the production of high octane motor fuels and chemical intermediates.

The 1927 licensing agreement provided that the defendant construct a plant in South Charleston, West Virginia, designed for a capacity of one thousand barrels of gas oil input per day into the apparatus used in the operation of the Gyro Process. This plant was constructed and equipped in accordance with plans furnished by the plaintiff. Thereafter, however, the defendant constructed and installed certain other machinery and plant facilities in close proximity to the South Charleston plant which plaintiff claimed were a part of the original plant thus increasing its daily capacity beyond 1000 barrels of gas oil input and giving rise to the question of whether a proper accounting of royalties had been made. To resolve this dispute plaintiff brought suit against the defendant in the United States District Court for the Eastern District of Michigan, Southern Division, and it was this litigation that was settled by the 1943 contract.

Under the provisions of the 1943 settlement contract the defendant paid the sum of $75,000 for a full release of all claims asserted against it by the plaintiff in the then pending litigation and for all claims in any way growing out of the 1927 licensing agreement which was declared cancelled. The defendant was also released from all claims "whether by way of royalty or otherwise, based on or arising out of any operation or other use which Carbide [defendant] may hereafter make of the Plant[1] and other facilities as now existing or as hereafter repaired, remodeled or improved up to the present capacity thereof." The contract further recited that since the defendant desired to acquire the right to operate the "Plant" in excess of its present capacity that the plaintiff sold to the defendant for $50,000 a paid up license permitting the defendant to increase the daily capacity by an additional two thousand barrels of gas oil input. And it was declared to be the intention of the parties that the defendant without further obligation or payment of royalties "by virtue of this agreement, shall have the right to operate the said Plant and other facilities as now existing or as hereafter repaired, remodeled, rebuilt, improved, expanded, added to or otherwise changed up to the present capacity thereof and, in addition thereto up to a daily input of two thousand (2000) barrels of gas oil or its equivalent."

The plaintiff contends that the defendant has breached the 1943 contract in two principal respects. The first breach complained of is that the defendant has utilized the Gyro Process in excess of royalty paid limits and has used it in a large number of newly built plants other than the South Charleston plant which is the only plant covered by the prepaid royalty license. The second alleged breach of the contract is that the defendant has developed improvements to the Gyro Process and has refused to disclose these improvements to the plaintiff although obligated to do so by the contract.

■■ The defendant submits that the 1943 contract deals solely with the use of the Gyro Process in the South Charleston plant and does not prohibit or limit its use in any other plant built or oper-

1. "Whereas, pursuant to said agreement, and in accordance with plans, drawings, and specifications furnished by Gyro to Carbide thereunder, Carbide during the years 1927–1928 constructed or installed machinery, apparatus and other plant facilities at South Charleston, West Virginia, for a plant having a designated capacity of one thousand (1,000) barrels of gas oil imput per day, and thereafter from time to time has made additions and repairs thereto and changes therein (all said machinery, apparatus and other plant facilities, as originally existing and as so added to, repaired, or changed, being hereinafter called the "Plant"); * * *"

ated by the defendant, and further, in answer to plaintiff's second contention, that the contract does not require the disclosure to the plaintiff of any improvements that may have been developed to the Gyro Process. While the use of the Gyro Process outside of the South Charleston plant is not admitted, the defendant contends that even if it was so used in violation of plaintiff's rights the remedy does not lie in this action since such usage would not be a violation of the 1943 contract. It urges that the only grounds upon which the plaintiff could recover in this action for breach of contract would be a showing of an increase after November 1, 1943, of the capacity of the South Charleston plant by more than a daily input of two thousand barrels. We agree.

The replies to interrogatories and affidavits filed in support of defendant's motion for summary judgment establish without dispute that there was no excess use of the Gyro Process at the South Charleston plant. Therefore, since this fact is undisputed, the breach of the contract because of alleged excess usage in other plants of the defendant presents a question of law depending on the construction and legal effect of the 1943 contract.

The language of the contract is clear and unambiguous. It settled litigation arising out of the 1927 licensing agreement under which the South Charleston plant was constructed and operated. No other plant or operation is referred to and the paid up license for the continuing use of the Gyro Process and the sale of the paid up license for increased capacity was for use only at the South Charleston plant. Nowhere in the contract is there an express provision prohibiting the defendant from using the process at other plants, nor can such a prohibition be implied due to the plain words of Paragraph 5 of the contract. This paragraph reads as follows:

"5. This agreement contains all the acknowledgments, representations, warranties, rights, duties, covenants and agreement of any na-

ture or kind or relating to any subject matter whatsoever between the parties hereto and no acknowledgment, representation, warranty, right, duty, covenant or agreement shall be implied."

This provision of the contract is also a complete answer to another contention of the plaintiff that certain trade secrets which are a part of the over-all Gyro Process were utilized by the defendant in plants other than the South Charleston plant in violation of plaintiff's rights under the contract. This is so because the contract does not expressly prohibit such use and does specifically provide that no such agreement can be implied. Primarily the plaintiff relies on the arbitration clause contained in the contract to support its claim that excess usage in other plants of the defendant is a breach of contract. It is as follows:

"In case any dispute shall arise between the parties hereto as to whether or to what extent, if any, Carbide [defendant] shall, after the date of this agreement, have operated in excess of the amounts permitted under the releases and discharges aforesaid or as to any other matter whatsoever such dispute shall be submitted to arbitration * * * Any and all claims, questions, disputes or demands based on or arising out of this agreement shall be determined solely by arbitration as aforesaid."

The wording of this arbitration clause, however, cannot be said to enlarge the specified scope of the carefully drafted contract. The clause is merely intended to provide a method of settling a controversy and as it states, its provisions are to be invoked to determine "the claims, questions, disputes or demands based on or arising out of this agreement. * * *" It is also a familiar rule in the construction of contracts that the intention of the parties is to be gathered from the entire instrument and not from detached portions. A contract cannot be disjointed or particular parts separated from the balance, as it is nec-

essary to consider all of the provisions of a contract in order to determine the meaning of any particular part as well as the meaning of the whole document. Miller v. Robertson, 266 U.S. 243, 45 S.Ct. 73, 69 L.Ed. 265; In re Baxter, 6 Cir., 104 F.2d 318; Dickinson v. Stokes, 6 Cir., 62 F.2d 84; O'Brien v. United Home Life Insurance Co., D.C., 147 F. Supp. 761, affirmed 6 Cir., 250 F.2d 483; Johnston v. Miller, 326 Mich. 682, 40 N. W.2d 770; Galperin v. Michelson, 301 Mich. 491, 3 N.W.2d 854; Restatement of the Law of Contracts, Sec. 235.

Plaintiff's further contention is that the defendant is obligated by the 1943 contract to disclose and allow plaintiff a royalty-free license to use and practice improvements or additions to the Gyro Process devised or acquired by the defendant since November 1, 1943. The basis of this claim is the following language in Paragraph 3 of the 1943 contract:

"3. Carbide wishes to acquire the right to operate the Plant and additions thereto and expansions thereof in an amount in excess of the present capacity thereof. Gyro [plaintiff] warrants and guarantees that, in addition to unlimited licensing rights as to the Gyro Process, it did, by virtue of agreement dated June 30, 1933, between Wolverine Producing and Refining Company and Gyro, acquire from said Wolverine Producing and Refining Company licensing rights as to the Gyro Process covering a daily input of six thousand (6000) barrels of gas oil, of which it still owns licensing rights as to a daily input of two thousand (2000) barrels of gas oil, which licensing rights as to a daily input of two thousand (2000) barrels are hereby sold and assigned by Gyro to Carbide in consideration of which Carbide hereby pays to Gyro Fifty thousand ($50,000.00) Dollars, the re-ceipt of which is hereby acknowledged. * * *"

The agreement dated June 30, 1933, between Wolverine Producing and Refining Company and the plaintiff did require the Wolverine Producing and Refining Company to disclose to the plaintiff any improvements to the Gyro Process that it should develop or acquire and to grant a royalty-free license for their use. However, the defendant is not a party to that agreement and no such obligation appears in the 1943 contract. The contract merely recites that the plaintiff repurchased certain licensing rights to the Gyro Process it had previously sold to Wolverine Producing and Refining Company and then resold some of them to the defendant. The defendant is clearly not an assignee of Wolverine, and if it had been the intention of the parties that the defendant disclose any developed improvements, such a covenant could have easily been expressly provided. The courts do not write contracts for the parties nor do they read into an unambiguous contract words or provisions it does not contain. Douglass v. Douglass, 21 Wall. 98, 88 U.S. 98, 22 L.Ed. 479; Knox v. First Security Bank of Utah, 10 Cir., 196 F.2d 112; E. D. Stair Corporation v. Taylor, 6 Cir., 39 F.2d 788; Rowe v. Chesapeake Mineral Co., D.C., 61 F.Supp. 773, affirmed 6 Cir., 156 F.2d 752; Sterneck v. Equitable Life Ins. Co., of Iowa, 8 Cir., 237 F.2d 626; Henrietta Mills, Inc. v. Commissioner, 4 Cir., 52 F.2d 931.

Since the defendant has not breached the 1943 contract either by using the Gyro Process in excess of royalty paid limits at the South Charleston plant or by using it in other plants, if it was so utilized; or by failure to disclose any improvements that may have been developed, or for any other reason advanced, there can be no recovery by the plaintiff in this action for breach of contract.

The judgment of the District Court is affirmed.