824 F.2d 965
 3 U.S.P.Q.2d 1439
 UNIDISCO, INC., Plaintiff-Appellant,
v.
Robert I. SCHATTNER, d/b/a "The Sporicidin Company,"
Defendant/Cross-Appellant,
v.
UNIDISCO, INC., the Veratex Corporation and Chemed
Corporation, Counterclaim Defendants-Appellants.
 Nos. 86-1682, 87-1001.
 United States Court of Appeals,
Federal Circuit.
 July 29, 1987.
 
 J. Robert Chambers, Wood, Herron & Evans, Cincinnati, Ohio, argued for appellants. Francis J. Gorman and James A. Johnson, Semmes, Bowen & Semmes, Baltimore, Md., were on the brief for appellants. JoAnne Zawitoski, Semmes, Bowen & Semmes, Baltimore, Md., of counsel. Also on the brief were Harold Haidt and Lorimer P. Brooks, Brooks, Haidt, Haffner & Delahunty, of New York City.
 Brent N. Rushforth, Dow, Lohnes & Albertson, Washington, D.C., argued for appellee. With him on the brief were Michael D. Hays and Gregory D. Cook.
 Before MARKEY, Chief Judge, RICH and BISSELL, Circuit Judges.
 BISSELL, Circuit Judge.
 
 
 1
 Unidisco, Inc., The Veratex Corporation, and Chemed Corporation (collectively, Unidisco) appeal, and Robert I. Schattner (Schattner) cross-appeals from the judgment of the United States District Court for the District of Maryland, 231 USPQ 593 (D.Md.1986) in favor of Schattner on the issues of patent infringement and tortious interference with contract, and in favor of Unidisco on the issue of unfair competition. We affirm-in-part and reverse-in-part.
 
 BACKGROUND
 
 2
 Unidisco began this action seeking a declaratory judgment that Schattner's patent No. 4,103,001 (the '001 patent) was invalid. Schattner counterclaimed against Unidisco for patent infringement, tortious interference with contract, and unfair competition.
 
 
 3
 Sporicidin, the patented composition, is a liquid sterilant capable of killing all forms of microorganisms, including spores, within a given contact period. When diluted, Sporicidin can also be used as a disinfectant. When used as a disinfectant, it will kill non-spore microorganisms within a given contact period.
 
 
 4
 Representatives of Unidisco met with Schattner in late 1978 to discuss Unidisco's marketing Sporicidin to the dental profession as a sterilant and dilutable disinfectant. At the same time, Schattner was also negotiating with another company, Girard, Inc. On December 26, 1978, Schattner granted Girard "an exclusive license to make, have made by others solely for Girard's use or sale hereunder, use and sell compositions covered by the ['001] Patent." The license agreement also provided that "Girard's rights and obligations hereunder may not be assigned or sub-licensed without written approval of Schattner" until after certain payments described in the agreement had been made by Girard to Schattner.
 
 
 5
 On January 30, 1979, Girard entered into an exclusive distributorship agreement with Unidisco under which Unidisco purchased Sporicidin for resale to the dental market. Schattner learned in early 1979 that Unidisco was promoting itself as a distributor of Sporicidin. Nevertheless, he continued to accept royalties from Girard on sales made to Unidisco. He did not object to the agreement between Girard and Unidisco until June 4, 1979, when Schattner notified Girard of his intent to arbitrate the issue of an illegal sublicense, along with other disputes under the licensing agreement. In February 1980, the arbitrators declared the license agreement terminated and awarded Schattner $596,000 which included royalties on Girard's sales of Sporicidin to Unidisco that Schattner later alleged were infringing.
 
 
 6
 During early 1980, Unidisco was in possession of approximately 14,000 quarts of Sporicidin. Unidisco's sales efforts were hampered by an incorrect statement on the labels of the bottles of Sporicidin that it was approved by the American Dental Association (ADA) for use as a disinfectant when diluted with water in a ratio of thirty-to-one. Schattner had originally obtained ADA approval for use of Sporicidin as a disinfectant when diluted thirty-to-one, but upon further testing, it was discovered that when diluted thirty-to-one, the product was incapable of killing tubercule bacillus (TB). As a result, the ADA informed Schattner that the product was not approved as a disinfectant when diluted thirty-to-one. The labels on the bottles in Unidisco's possession stated that the product could be used as a disinfectant when diluted thirty-to-one, but that, if TB were suspected, it should be used full strength. After February 20, 1980, both the ADA and the Environmental Protection Agency (EPA) approved Sporicidin as effective against TB when diluted sixteen-to-one. Schattner and Unidisco both wanted the correct dilution ratio stated on the labels. Unidisco prepared updated labels which were attached to the bottles with rubber bands and tape. Schattner did not approve of this method of re-labeling the bottles. Unidisco sold the re-labeled Sporicidin.
 
 
 7
 The case was tried before a jury for eleven weeks. The jury returned a verdict for Schattner on Unidisco's claim of patent invalidity. Schattner counterclaimed that Unidisco willfully infringed the '001 patent by selling the 14,000 quarts of Sporicidin under the distributorship agreement. The jury found the patent willfully infringed and awarded a reasonable royalty of $182,000, which the court trebled. Schattner counterclaimed that Unidisco had entered into a sublicensing agreement with Girard, and that by doing so, Unidisco had tortiously interfered with the contractual relationship between Schattner and Girard. On this counterclaim the jury awarded $1.00 nominal damages and $4,000,000 punitive damages. Finally, Schattner counterclaimed that Unidisco unfairly competed against him by affixing shoddy labels to the Sporicidin bottles and selling them to the public, while Unidisco was attempting to develop a product to compete with Sporicidin. The jury found in Schattner's favor on this counterclaim and awarded $1.00 as nominal damages and $6,000,000 punitive damages. The court applied District of Columbia law on all of the common law counterclaims.
 
 
 8
 The trial court entered judgment for Schattner on Unidisco's claim of patent invalidity. Unidisco does not appeal that aspect of the judgment. Unidisco moved in the alternative for judgment notwithstanding the verdict (JNOV), new trial, or remittitur with respect to Schattner's counterclaims. The trial court denied the motions with respect to the patent infringement counterclaim. With respect to the tortious interference with contract counterclaim, the court granted the motion for JNOV in part, refusing to enter judgment for punitive damages, because District of Columbia law does not allow recovery of punitive damages in such cases based on an award of nominal damages. The court granted the motion for JNOV on the unfair competition counterclaim on the basis that Schattner had failed to state a claim cognizable under the law of the District of Columbia. The trial court's disposition of the motions for new trial and remittitur are not relevant to this appeal. In accordance with the court's rulings on post trial motions, it entered judgment for Schattner on the patent infringement and tortious interference with contract counterclaims.
 
 ISSUES
 
 9
 1. Does the sale of Sporicidin by Girard to Unidisco under an exclusive distributorship agreement, as a matter of law, constitute a sublicense?
 
 
 10
 2. Did the trial court err, as a matter of law, by denying Unidisco's motion for JNOV on the issue of tortious interference with contract?
 
 
 11
 3. Did the trial court err, as a matter of law, by granting Unidisco's motion for JNOV on the issue of unfair competition?
 
 OPINION
 I. Standard of Review
 
 12
 The issues in this appeal all turn on whether the trial court properly granted or denied motions for JNOV. This court reviews a judgment entered after the grant or denial of a motion for JNOV to determine whether the jury's factual findings were supported by substantial evidence, or if so, whether the jury's legal conclusions were supported by those facts. DMI, Inc. v. Deere & Co., 802 F.2d 421, 425, 231 USPQ 276, 278 (Fed.Cir.1986); Perkin Elmer Corp. v. Computervision Corp., 732 F.2d 888, 893, 221 USPQ 669, 673 (Fed.Cir.), cert. denied, 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984); Railroad Dynamics, Inc. v. A. Stucki Co., 727 F.2d 1506, 1512, 220 USPQ 929, 936 (Fed.Cir.), cert. denied, 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984). In this case, the parties do not assert that the jury's factual findings are unsupported by substantial evidence. Unidisco contends that the facts found do not support the legal conclusions implied by the jury's verdict on the issues of patent infringement and tortious interference with contract. Schattner contends that the trial judge erroneously concluded that the facts found did not support the jury's legal conclusion on unfair competition.
 
 II. Patent Infringement
 
 13
 The judgment on infringement was based on the jury's affirmative response to the following question on the special verdict form: "Did Unidisco and Veratex infringe Dr. Schattner's patent when they sold the 14,000 quarts of Sporicidin acquired from Girard?" The facts of the case do not support the jury's conclusion of patent infringement.
 
 
 14
 Resale of the product by Unidisco could not infringe the patent if Unidisco purchased the product from an authorized seller. Schattner licensed Girard, giving it authority to sell the product. The license prohibited sublicensing, but did not prohibit sales by Girard, under an exclusive distributorship agreement. Girard's sale of the product to an exclusive distributor, was not a sublicense and did not violate the terms of the license. See Lisle Corp. v. Edwards, 777 F.2d 693, 695, 227 USPQ 894, 895 (Fed.Cir.1985). Consequently, Unidisco had authority to resell the product it purchased from Girard and its sales were not infringing. 35 U.S.C. Sec. 271(a) (1982). Because there are no facts in the record to support the conclusion that Unidisco infringed the patent, we must reverse the judgment on infringement.
 
 III. Tortious Interference with Contract
 
 15
 In light of our holding on the patent infringement issue, we must reverse the judgment on the verdict of tortious interference with contract. Throughout the trial, Schattner based his tortious interference counterclaim on the alleged "illegal sublicense" between Unidisco and Girard. As the trial court observed in its opinion: "Dr. Schattner argued that the second license agreement constituted an illegal sublicense obtained in willful disregard of Dr. Schattner's own contract rights and in express derogation of paragraph 7 of Dr. Schattner's agreement with Girard." 231 USPQ at 607. The record before us does not establish that Schattner asserted at trial any other basis for his tortious interference counterclaim. We conclude, therefore, that the jury's verdict that Unidisco tortiously interfered with the Girard-Schattner contract was predicated on the erroneous conclusion that the Unidisco-Girard contract was a sublicense. Because the underlying conclusion was incorrect as a matter of law, we hold that the jury's conclusion on tortious interference with contract was likewise incorrect as a matter of law.
 
 IV. Unfair Competition
 
 16
 The final issue presented in this appeal is whether the trial judge erred by granting Unidisco's motion for JNOV on the verdict of unfair competition. Schattner contends that Unidisco's conduct falls within the broad scope of the tort of unfair competition as it has developed at common law. Schattner asserts that, were it to determine the issue, the District of Columbia Court of Appeals would apply the "general law" of unfair competition as it has developed in other jurisdictions.
 
 
 17
 Although we have discovered no cases of the District of Columbia Court of Appeals precisely on point, other cases purporting to apply the District of Columbia law of unfair competition have addressed the scope of the tort. In Ray v. Proxmire, 581 F.2d 998 (D.C.Cir.), cert. denied, 439 U.S. 933, 99 S.Ct. 326, 58 L.Ed.2d 329 (1978), the court affirmed a judgment dismissing with prejudice Ray's complaint for failure to state a claim. The complaint alleged, among other things, that Proxmire's tour and hospitality service, had unfairly competed with a similar service operated by Ray, in that Proxmire had traded on the prestige and contacts she had developed as the wife of a United States senator. In considering the scope of the tort of unfair competition under District of Columbia law, the court stated: "Its scope has ... been limited to three categories: passing off one's goods as those of another, engaging in activities designed solely to destroy a rival and using methods themselves independently illegal." Id. at 1002. Accord Scanwell Laboratories, Inc. v. Thomas, 521 F.2d 941, 949 (D.C.Cir.1975), cert. denied, 425 U.S. 910, 96 S.Ct. 1507, 47 L.Ed.2d 761 (1976).
 
 
 18
 As in Proxmire, though perhaps to a lesser degree, Schattner's unfair competition claim probes the outer reaches of the tort. If the judges deciding Proxmire (who are not unfamiliar with District of Columbia law), while considering all facts and inferences in the light most favorable to Ray, declined to apply a "general law" of unfair competition, we see no reason to do so here. Where the District of Columbia Court of Appeals has not addressed the issue, we will not expand the scope of the tort of unfair competition recognized in existing case law.
 
 
 19
 As the trial court noted when ruling on the motion for JNOV, the only one of the three categories of unfair competition into which Unidisco's conduct arguably might fit is the second. The record, however, contains no evidence from which a reasonable juror could conclude that the sole purpose of Unidisco's conduct was to destroy Schattner's business. Consequently, we affirm the judgment on this issue.
 
 CONCLUSION
 
 20
 For the reasons stated, we reverse the judgment of infringement and tortious interference with contract, and affirm the judgment of no unfair competition. Each party shall bear its own costs.
 
 
 21
 AFFIRMED-IN-PART AND REVERSED-IN-PART.