**KABUSHIKI KAISHA HATTORI SEIKO trading as Hattori Seiko Co., Ltd., Plaintiff,**

v.

**REFAC TECHNOLOGY DEVELOPMENT CORPORATION, Refac Electronics Corporation and Refac International, Ltd., Defendants.**

No. 87 Civ. 7891 (MGC).

United States District Court, S.D. New York.

July 21, 1988.

Blum Kaplan by Lawrence Rosenthal, Harold I. Kaplan, Matthew W. Siegal, New York City, for plaintiff.

Cobrin & Godsberg, P.C. by Peter T. Cobrin, Abby Avroch Ross, New York City, for defendants.

## UNSEALED OPINION

CEDARBAUM, District Judge.

Plaintiff and defendants have cross-moved for summary judgment in this action, which turns on the construction of a patent licensing agreement. For the reasons discussed below, plaintiff's motion for partial summary judgment is granted and defendants' motion is denied.

## BACKGROUND

Plaintiff Kabushiki Kaisha Hattori Seiko ("Hattori") is a trading company engaged in the distribution and sale throughout the world of products including timepieces. Defendants Refac Technology Development Corporation, Refac Electronics Corporation and Refac International, Ltd. ("Refac")[1] are the owners of numerous United States patents, and are primarily engaged

---

1. For the purpose of deciding these motions, the three Refac defendants may be treated as a single entity. Therefore, in the remainder to this opinion the term "Refac" shall refer to any or all of the defendants.

in the business of acquiring, licensing and enforcing patent rights. On November 20, 1985, Hattori and Refac entered into the agreement upon which this action is based (the "Agreement"). The Agreement settled claims asserted by Refac in an action in the Southern District of New York against Hattori Corporation of America, a corporation related to Hattori. The Southern District action involved a charge of infringement of U.S. Patent No. 3,855,783, which is directed to electronic digital timepieces.

The Agreement grants Hattori a license under certain patents owned by Refac, including the '783 patent, and also includes a covenant not to sue. As consideration for the license, Hattori agreed to pay a sum of money the amount of which the parties have agreed should remain confidential.

Paragraph 2 of the Agreement, the "grant clause," provides:

REFAC hereby grants to HATTORI and its related companies an irrevocable ... fully paid up, non-exclusive license for the entire term of each patent, to make, have made, use, have used, sell and have sold products coming within the scope of U.S. Patent Nos. 3,855,783; 3,744,049; 3,842,589; 3,955,355, and 4,008,564 and all other patents directed to or covering digital timepieces now owned or hereafter owned by REFAC or its affiliates, and all non-U.S. counterparts of any of said patents.

The covenant against suit, ¶ 17, provides:

REFAC represents that no patent now owned by it or by an affiliate shall hereafter be the subject of a suit charging infringement by any timepiece, timer, metronome, computer, television, machine tool, liquid crystal displays, printer or computer peripheral products manufactured, used or sold by HATTORI and/or a related company thereof....

Paragraph 12 of the Agreement requires that Refac include a note in its complaint in any future action it brings for infringement of a patent licensed under the Agreement. The note "shall ... state[ ] that the products of Hattori ... are licensed under the patent and the action does not apply to such products." ¶ 12.

Hattori was represented by experienced patent counsel in the negotiation of the Agreement. Philip Sperber, an officer of Refac and an attorney experienced in the field of patent licensing who has written a number of books on patents and licensing, negotiated on behalf of Refac. The parties disagree as to who drafted the language at issue on these motions.

This action concerns sales made abroad by Hattori to customers who then, directly or indirectly, resell the articles in the United States as so-called "gray goods" or incorporate them into products that are sold in the United States. Refac argues that the license granted to Hattori in the Agreement permits Hattori to sell only in the United States, and that sales in the United States by third parties who purchase products from Hattori abroad infringe Refac's patent rights. Hattori, on the other hand, contends that since the license contains no geographic restriction, Hattori's right to sell extends worldwide.

In accordance with its understanding of the Agreement, Refac brought suit on September 17, 1987, in the United States District Court for the Eastern District of Michigan against Advance Watch Co. ("Advance") and a number of other defendants. Advance purchases abroad from Hattori certain timepiece modules, and incorporates them into watches which it sells in the United States. The first claim in Refac's complaint in Michigan asserts that by selling watches in the United States that incorporate modules purchased abroad from Hattori, Advance is infringing three of the patents licensed to Hattori in the Agreement. The second and third causes of action allege that various defendants other than Advance infringed the same patents. The complaint includes a note in each of these causes of action stating that Hattori is licensed "for sales they made in the United States."

Hattori has moved for summary judgment on Counts I and III of its complaint in this action. In Count I, Hattori claims that Refac breached the Agreement (1) by de-

manding a royalty from Advance on Hattori products purchased abroad and incorporated into articles that Advance resells in the United States, (2) by bringing the Michigan action against Advance, and (3) by including a note in the Michigan action that does not conform to ¶ 12 of the Agreement.[2] In Count III, Hattori seeks a declaratory judgment (1) that the Agreement is not geographically limited, but covers Hattori products no matter where they are sold, and (2) that Refac may not claim royalties on products sold by Hattori abroad and subsequently resold in the United States, if Hattori is entitled under the Agreement to sell the products in the United States. Hattori has also moved for summary judgment dismissing Refac's counterclaim, which charges Hattori with contributory infringement and infringement inducement by selling abroad products covered by the license, knowing that they would be resold in the United States. Refac has cross-moved for summary judgment dismissing the complaint on the ground that the Agreement grants Hattori a license to sell only in the United States.

## DISCUSSION

When the construction of a contract is at issue, summary judgment is proper "when the language is unambiguous and reasonable persons could not differ on its meaning." *American Home Assurance Co. v. Baltimore Gas & Electric Co.*, 845 F.2d 48, 50–51 (2d Cir.1988). When the language "is susceptible of at least two fairly reasonable interpretations, there is a triable issue of fact and summary judgment is inappropriate." *Id.* at 51; *see Wards Co., Inc. v. Stamford Ridgeway Associates*, 761 F.2d 117 (2d Cir.1985); *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4 (2d Cir.1983). With these principles firmly in mind, I turn to the two key provisions of the Agreement.

### A. *The License*

The language critical to determining the breadth of the license is that contained in ¶ 2, which grants Hattori a nonexclusive license "to ... sell ... products coming within the scope of" certain United States patents. In general, the first sale of a product by a patentee or licensee exhausts the patent monopoly, and deprives the holder of patent rights of any further control over resale of the product. *See United States v. Univis Lens Co.*, 316 U.S. 241, 250–52, 62 S.Ct. 1088, 1093–94, 86 L.Ed. 1408 (1942). This principle applies to an authorized first sale abroad by a patentee or licensee who also has the right to sell in the United States. Following such a sale, the holder of United States patent rights is barred from preventing resale in the United States or from collecting a royalty when the foreign customer resells the article here. *See Holiday v. Mattheson*, 24 F. 185 (C.C.S.D.N.Y. 1885); *see also Curtiss Aeroplane & Motor Corp. v. United Aircraft Engineering Corp.*, 266 F. 71 (2d Cir.1920); *see generally Sanofi, S.A. v. Med–Tech Veterinarian Products Inc.*, 565 F.Supp. 931 (D.N.J.1983). Refac concedes that Hattori had the right under the license to sell the products at issue in the United States. Therefore, if Hattori also was authorized to sell the products abroad, Refac's patent rights have not been infringed by any resale in the United States by Hattori's customers. Thus the two questions on which Hattori seeks a declaratory judgment are really one—whether Hattori has the right to sell licensed products abroad or whether its right to sell is restricted to the United States. If Hattori has the right to sell abroad, it is entitled to a declaration not only of that proposition, but of the corollary proposition that Refac may not claim royalties on Hattori products purchased abroad and resold in the United States by third parties.

The language in ¶ 2 includes no terms of geographical restriction limiting to the United States Hattori's right to sell. Nevertheless, Refac argues that, for two reasons, such a limitation should be read

---

**2.** Hattori has also argued on this motion that Refac breached the Agreement by including an improper note in its complaint in an action brought in California, and by bringing a counterclaim against Hattori in this action. Since these allegations are not included in the complaint, I do not consider them.

into the contract. First, Refac maintains that during negotiations over the license the parties only discussed Hattori's U.S. sales, that Hattori never disclosed its foreign sales to customers planning to resell in the United States, and that the consideration for the license was determined based only on Hattori's United States sales. Second, Refac contends that a United States patent has no extraterritorial effect, and that the phrase "within the scope of" certain United States patents necessarily limits the effect of the license to the United States.[3]

The Agreement provides that in the event of a dispute, New York law is to govern, ¶ 16, and the parties agree that New York law applies. *See Lear, Inc. v. Adkins,* 395 U.S. 653, 661–62, 89 S.Ct. 1902, 1906–07, 23 L.Ed.2d 610 (1969) (construction of patent license agreements governed by state law). Under New York law, evidence extrinsic to a contract may not be considered unless the agreement "is reasonably susceptible of more than one interpretation." *Chimart Associates v. Paul,* 66 N.Y.2d 570, 573, 498 N.Y.S.2d 344, 346, 489 N.E.2d 231 (1986). Thus, before its factual allegations concerning the negotiation of the contract may be considered, Refac must establish that ¶ 2 of the contract—which by its naked terms grants to Hattori a geographically unrestricted right to sell—is ambiguous on its face.

The use of the word "coming" in ¶ 2 establishes that the phrase "within the scope of [the relevant] U.S. Patent[s]" modifies the noun "products" and not the verb "sell." Refac does not contend otherwise. Instead, Refac maintains that United States patents protect the right only to make, use or sell products within the United States. *See* 35 U.S.C. § 154. Therefore, Refac argues, a product is not "within the scope of" a United States patent when it is being sold abroad.

Refac's argument is unconvincing. A patent's "scope," as is well established in patent law, refers not to the geographical area within which the patent provides protection, but to the nature of the products covered by the patent's claims. The term "scope of a patent" has been defined as follows:

> The *boundaries or limits of the invention protected by the patent,* which are not matters of metes and bounds and can never be defined in the definite sense employed in thinking of physical things, but must be determined by methods based upon established principles of patent law.

*Black's Law Dictionary* (5th ed. 1979) (emphasis added) (citation omitted). *See also Rhone–Poulenc Specialites Chimiques v. SCM Corp.,* 769 F.2d 1569, 1572 (Fed.Cir. 1985) ("The claim defines the scope, or limits, of the right to exclude conferred by the patent."); *Foster Wheeler Corp. v. Babcock & Wilcox Co.,* 512 F.Supp. 792, 799 (S.D.N.Y.1981) ("it is a fundamental rule of patent law that the claims of a patent determine its scope").

In interpreting an agreement concerning patents, "[t]echnical words ... must be taken in a technical sense unless the context of the instrument or a usage which is applicable clearly indicates a different meaning." *Nau v. Vulcan Rail & Construction Co.,* 286 N.Y. 188, 198, 36 N.E.2d 106 (1941). *See also* 6 E.B. Lipscomb III, *Lipscomb's Walker on Patents* §§ 20:58 at 204, 20:59 at 212 (3d ed. 1987) (terms with well-understood meaning in patent law normally given such meaning in interpreting patent licenses). Refac has pointed to nothing within the confines of the Agreement to warrant hesitation in concluding that the phrase "within the scope of U.S. Patent ...," as used in the Agreement, carries its usual meaning. Therefore, that phrase does not geographically limit the license granted.

---

**3.** Although ¶ 2 of the Agreement also refers to foreign counterparts of the licensed United States patents, Hattori does not argue that its right to sell abroad for resale in the United States arises under any foreign patent covered by the Agreement. Thus, although the parties disagree about the number of foreign counterpart patents that exist and that are referred to in the Agreement, this disputed fact is not material to resolving the issues presented by these motions.

Refac's argument fails on another ground as well. Even if the phrase "within the scope of U.S. Patent[s]" did limit the license to sales of products within the geographical protection of United States patents, a product sold abroad for resale in the United States *is* protected by United States patents. Its seller abroad may be liable for infringement inducement or contributory infringement of the United States patent under 35 U.S.C. § 271(b) or (c), even though that seller neither made, used nor sold the product in the United States. *See Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137, 1141 (7th Cir.1975); *Akzona Inc. v. E.I. du Pont de Nemours & Co.,* 662 F.Supp. 603, 613 (D.Del.1987); *Nippon Electric Glass Co. v. Sheldon,* 489 F.Supp. 119, 122 (S.D.N.Y.1980). Since the products with which Refac is concerned were resold in the United States, Hattori could be liable for contributory infringement of any applicable U.S. patents if it sold the products abroad without the permission of the holder of the patent rights. Indeed, in its counterclaim Refac has charged Hattori with exactly that. Therefore, at the time Hattori sold the products to its customers for resale in the United States, the products were within the scope of the protection afforded by United States patents, even if that term is read geographically, as Refac insists it must be.

■ Refac's other arguments as to why the license should be limited to sales in the United States are similarly unpersuasive. It is true that the third "Whereas" clause in the contract states that "Hattori desires to obtain certain *rights under ... patents* owned by Refac" (emphasis added). However, as noted above, selling abroad for resale in the United States is a right under United States patents. More importantly, this "Whereas" clause provides that among the rights sought by Hattori is that of "sale of products coming within the scope of [the licensed] patents." As in the grant

clause, there is no term of geographical restriction, and the term "scope" does not import one.

■ Similarly, ¶ 20, which provides that "[n]othing in this Agreement shall be deemed to grant to Hattori ... a right to grant sub-licenses under the patents licensed by this Agreement," does not demonstrate that sales by Hattori abroad for resale in the United States are not permitted under the Agreement. Because the first authorized sale of a patented article exhausts the patent monopoly in the article, even if that sale takes place abroad, *see Holiday v. Mattheson,* 24 F. 185 (C.C.S.D. N.Y. 1885), the sale of a patented article by a licensee to a third party for resale in the United States does not constitute the grant of a sublicense. *Unidisco, Inc. v. Schattner,* 824 F.2d 965, 968 (Fed.Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 774, 98 L.Ed.2d 860 (1988); *Lisle Corp. v. Edwards,* 777 F.2d 693, 695 (Fed.Cir.1985). This well-established legal principle is recognized in ¶ 20 itself, which provides: "It is recognized and agreed that products made, sold or otherwise distributed by Hattori or its related companies carry with it the license granted herein."

The plain terms of ¶ 2 of the Agreement, in language reinforced by that of ¶¶ 12 and 14,[4] grants Hattori a geographically unrestricted right to sell. The grant, negotiated by a sophisticated patent attorney on behalf of Refac, was worded comprehensively. Had Refac intended geographically to limit Hattori's right to sell, it could and should have included appropriate words of restriction. *See Bellefonte Re Ins. Co. v. Argonaut Ins. Co.,* 581 F.Supp. 241, 243 (S.D.N.Y.1984), *aff'd,* 757 F.2d 523 (2d Cir. 1985).

■ Refac argues that Hattori committed a fraud during the negotiation of the Agreement by failing to divulge the extent of its sales abroad to customers intending

---

**4.** Paragraph 14 states:

REFAC will supply to HATTORI and/or a designated related company a letter in a form acceptable to HATTORI on REFAC letterhead, to customers of HATTORI ... that HATTORI and its related companies are now a REFAC licensee under the licensed patents and such customers no longer have liability under such patents with respect to products bought from HATTORI and/or its related companies or a customer thereof.

to resell in the United States. Fraudulent inducement is an affirmative defense to a contract claim. *See Mix v. Neff,* 99 A.D.2d 180, 183, 473 N.Y.S.2d 31, 33 (3d Dept. 1984). As such, it must be pleaded. Fed. R.Civ.P. 8(c); *see also* Fed.R.Civ.P. 9(b). Refac has not pleaded fraud in either its original or its amended answer, and has sought neither rescission nor reformation of the Agreement. Instead, Refac argues that extrinsic evidence of this alleged fraud should be considered, and that the Agreement should be interpreted to grant Hattori a right to sell in the United States so as to avoid giving effect to the fraud. *See* Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment at 4–5.

In support of its argument, Refac relies solely on a passing statement in *Northville Industries Corp. v. Fort Neck Oil Terminals Corp.,* 100 A.D.2d 865, 867, 474 N.Y. S.2d 122, 125 (2d Dept.1984), *aff'd,* 64 N.Y. 2d 930, 488 N.Y.S.2d 648, 477 N.E.2d 1102 (1985), a case not involving any fraud. The statement, that absent evidence of fraud or other wrongful conduct a party is conclusively presumed to know the contents of a written contract to which it assents, refers to instances where a party agrees to a contract without having read it. *See Metzger v. Aetna Ins. Co.,* 227 N.Y. 411, 125 N.E. 814 (1920) (cited in *Northville Industries*). That situation is not presented here. Both parties were represented by experienced patent lawyers, and a number of drafts of the Agreement were considered.

■ Refac has presented no evidence that it ever asked Hattori about foreign sales, or that Hattori ever claimed that such foreign sales did not exist. Nor has Refac claimed that, on the basis of any omission by Hattori, it believed that such foreign sales did not exist. Rather, Refac seems to be contending that if the Agreement is construed to include foreign sales, then Hattori fraudulently drafted the Agreement in such a way as to reflect something that the parties did not intend— that is, that the license covered foreign as well as United States sales. Had Refac pleaded fraud, it might be able to seek reformation on this ground. *See Chimart Associates v. Paul,* 66 N.Y.2d at 573, 498 N.Y.S.2d at 346–47. However, its effort would have been unsuccessful. Refac has presented no evidence that it had any grounds for relying on Hattori to draft the Agreement in accordance with Refac's understanding. The Agreement was in settlement of litigation between sophisticated parties, and was drafted and reviewed by experienced patent lawyers on behalf of both parties. *See George Backer Management Corp. v. Acme Quilting Co.,* 46 N.Y. 2d 211, 413 N.Y.S.2d 135, 385 N.E.2d 1062 (1978).

### B. *The Covenant Against Suit*

■ The covenant against suit provided by Refac to Hattori in ¶ 17 of the Agreement leaves even less room for ambiguity than does the license. The covenant provides that no patent owned by Refac at the time the Agreement was entered would be the subject of a suit charging infringement by any of various products, including timepieces and liquid crystal displays, sold by Hattori. On its face, this covenant clearly provides that Refac may not bring suit against Hattori or its customers for infringement of the patents at issue in the counterclaim and in the Michigan action, whether or not the foreign sales by Hattori were covered by the license.

Refac's argument, that the covenant really means that no *non-licensed* patent owned by it would be the subject of an infringement suit against Hattori or its customers, requires rewriting the Agreement and finds no support within the four corners of the document. In support of this position, Refac offers only the conclusory affidavit testimony of Sperber that it is the usual custom in patent licensing to draft a covenant not to sue that is co-extensive with a license with respect to particular patents. Refac contends that since this covenant is plainly not co-extensive with the license, it must involve different patents. I do not reach this argument, because "evidence of industry practice may not be used to vary the terms of a contract that clearly sets forth the rights and obli-

gations of the parties." *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir.1985), quoting *Croce v. Kurnit*, 737 F.2d 229, 238 (2d Cir.1984).

In this case, the clear and unambiguous language of the Agreement could not reasonably be interpreted as supporting Refac's position that the Agreement grants Hattori a license to sell only in the United States, and that it bars infringement suits against Hattori and its customers based only on patents not involved in the license arrangement. Therefore, summary judgment in Hattori's favor is appropriate.

Because of the numerous claims asserted, I set out with particularity the holding of this opinion. On the basis of the covenant against suit, Hattori is entitled to summary judgment dismissing Refac's counterclaim. The counterclaim is a suit charging infringement of a Refac patent by timepieces and liquid crystal displays sold by Hattori. The covenant expressly prohibits such a suit. On the same basis, Hattori is entitled to summary judgment on Count I, which claims breach of contract, insofar as that claim alleges that Refac breached the Agreement by charging Advance with infringement in the Michigan action based on timepieces Advance purchased from Hattori. On the basis of ¶ 12, Hattori is entitled to summary judgment on its breach of contract claim insofar as it alleges that Refac failed to include in its complaint in the Michigan action a properly-worded note concerning the liability of Hattori and its customers. The note in the Michigan action suggests that Hattori's license to sell is limited to the United States, whereas the note contemplated by the Agreement contains no such limitation. Hattori has not established, however, the allegation in its complaint that Refac breached the Agreement by demanding royalties from Advance in any other way besides bringing suit against it. *See Florida Canada Corp. v. Union Carbide & Carbon Corp.*, 280 F.2d 193 (6th Cir.), *cert. denied*, 364 U.S. 902, 81 S.Ct. 234, 5 L.Ed. 2d 194 (1960) (declining to read into patent license agreement a provision that could have been included by parties). Finally, on the basis of ¶ 2, Hattori is entitled to the declaratory judgment it seeks in Count III.

## CONCLUSION

Hattori's motion for partial summary judgment as to liability on Counts I and III is granted. Hattori's motion for summary judgment dismissing the counterclaim is also granted. Refac's cross-motion for summary judgment is denied.

SO ORDERED.