## EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Plaintiff–Appellant,

v.

## Jeffrey M. POE, Defendant–Appellee.

No. 96–2366.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 5, 1997.

Decided May 6, 1998.

Stephen J. Hitchcock (argued and briefed), Cox, Hodgman & Giarmarco, Troy, MI, for Plaintiff–Appellant.

Merrill H. Gordon (argued and briefed), Farmington Hills, MI, for Defendant–Appellee.

Before: BOGGS, MOORE, and FARRIS,* Circuit Judges.

## OPINION

MOORE, Circuit Judge.

Plaintiff–Appellant, Equitable Life Assurance Society of the United States ("Equitable Life"), appeals the district court's decision granting summary judgment to defendant-appellee, Jeffrey M. Poe ("Poe"), in this diversity action concerning a disability insurance contract dispute. For the reasons that follow, we affirm.

## I. FACTS & PROCEDURAL HISTORY

Most of the relevant facts are undisputed. In July 1992, Equitable Life issued a disability insurance policy (the "Policy" or the "initial Policy") to Poe, then a practicing attorney, based upon an application that was filled out by Equitable Life's insurance agent Robert Poe, who is also Poe's uncle. Joint Appendix (J.A.) at 20 (Policy No. 92–711–702), 235, 356 (Poe Dep. at 6, 127). Question 3h on the application for the Policy asked if the proposed insured had ever been treated for or had any known indication of "[a]ny disease or disorder of eyes, ears, nose, throat or speech." J.A. at 17 (Application Part I at 2). According to Poe, the insurance agent, who was told by Poe that he had been consulting various doctors about his hearing problems, nevertheless answered the above question in the negative.[1] J.A. at 454–55 (Poe Dep. at 133–34) (Ex. 10). Although Equitable Life has not conceded this disclosure issue, both Poe and the agent stand by this version of the story. J.A. at 403–05, 416 (recount of Robert Poe Dep. at 88, 132). The agent has also stated that he was the one who signed the application. J.A. at 404 (recount of Robert Poe Dep. at 132). Records indicate that Poe had a history of hearing problems and had a consultation with a medical professional about such problems as early as 1979. J.A. at 260 (Poe Dep. at 31). In October 1992, the Policy lapsed for non-payment of premium. J.A. at 390 (Klein Dep. at 83) (Ex.

---

* The Honorable Jerome Farris, Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

1. Poe notes in his brief that the agent had over 20 years of experience. Appellee's Br. at 5.

6). On October 1, 1993, Poe submitted a request for reinstatement of his Policy. J.A. at 192 (Request for Reinstatement) (Ex. 2). On this application, Poe was asked in question 4b if "[w]ithin the last 5 years, [he had] consulted a physician, or been examined or treated at a hospital or other medical facility." Poe answered this question in the affirmative, explaining that he had seen a doctor for a routine audiogram and that there was no change. J.A. at 193 (Request for Reinstatement) (Ex. 2). The reinstated Policy became effective January 14, 1994. J.A. at 390 (Klein Dep. at 83) (Ex. 6). In December 1994, Poe filed a claim for disability alleging total disability as a result of severe hearing loss. J.A. at 198 (Claim Application).

Equitable Life rejected Poe's claim under the Policy (J.A. at 42–43 (Counter–Compl. at ¶¶ 11, 24); 139–40 (Pl./Counter–Def.'s Answer to Counter–Compl. at ¶¶ 11, 24)) and thereafter filed a complaint in federal court alleging fraudulent misstatement[2] and non-coverage of a pre-existing condition and requesting rescission or a determination that Poe's disability claim was not covered under the Policy. J.A. at 12, 73 (Compl.; 1st Am. Compl.). Poe responded by filing a counter-claim alleging breach of contract and bad faith dealings by Equitable Life. J.A. at 41 (Counter–Compl.). When both parties filed motions for summary judgment on their respective complaints, the district court denied Equitable Life's partial motion but granted Poe's motion. J.A. at 155, 391 (Mots. for Summ. J.), 78 (Order). Equitable Life timely appealed the district court's order and judgment. J.A. at 104 (Notice of Appeal). The district court had original jurisdiction based on diversity of citizenship[3] under 28 U.S.C. § 1332. This court has appellate jurisdiction, pursuant to 28 U.S.C. § 1291, over the timely appeal of the district court's final judgment in the instant case.

On appeal, Equitable Life makes three claims, upon all of which it must prevail if it is to show that Poe's disability claim can properly be denied under the terms of the Policy: (1) that Poe's disability is a "pre-existing condition" not covered pursuant to the Policy's reinstatement provision; (2) that the Policy's incontestability clause does not bar Equitable Life from denying coverage of Poe's disability as a "preexisting condition"; and (3) that, assuming Poe's prior hearing condition was disclosed to Equitable Life's agent, this condition can still be considered a "pre-existing condition" as defined in the Policy. Because we ultimately conclude that the Policy's incontestability clause does bar Equitable Life from denying coverage of Poe's disability, we need not rule on the two other issues. Accordingly, the following discussion will focus primarily on an analysis of the Policy's incontestability clause.

## II. ANALYSIS

### A. Standard of Review and Choice of Law

This court will review de novo the district court's grant of summary judgment. *See Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 465 n. 10, 112 S.Ct. 2072, 2082 n. 10, 119 L.Ed.2d 265 (1992); *Sargi v. Kent City Bd. of Educ.,* 70 F.3d 907, 910 (6th Cir.1995). We will, therefore, apply the same legal standard, Federal Rule of Civil Procedure 56(c), that is utilized by the district court. *See Sheet Metal Workers Local 141 Supplemental Unemployment Benefit Trust Fund v. United States,* 64 F.3d 245, 248 (6th Cir.1995), *cert. denied,* 516 U.S. 1049, 116 S.Ct. 713, 133 L.Ed.2d 668 (1996). Pursuant to Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

**2.** Equitable Life has not appealed the district court's judgment with respect to this claim. At oral argument, Equitable Life confirmed that it was not arguing the existence of fraud on the part of Poe.

**3.** Equitable Life Assurance Society is a citizen of New York, where it is incorporated and has its principal place of business. Jeffrey Poe resides in Michigan and is a citizen of Michigan. The amount in controversy exceeds $50,000. Although under current statutory law the amount in controversy must exceed $75,000, this suit was filed on June 21, 1995, before the statutory requirement was increased.

judgment as a matter of law." *See also Canderm Pharmacal, Ltd. v. Elder Pharms., Inc.,* 862 F.2d 597, 601 (6th Cir.1988). In other words, a grant of summary judgment is affirmed on appeal only if three criteria are met: (1) the district court applied the proper law; (2) the district court made no errors applying the law to the facts; and (3) there are no genuine issues of material fact. *See Lantech, Inc. v. Keip Machine Co.,* 32 F.3d 542, 545 (Fed.Cir.1994).

■ Pursuant to the well-known doctrine of *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a federal judge sitting in a diversity action must apply the same substantive law that would be applied if the action had been brought in a state court of the jurisdiction in which the federal court is located. Therefore, in determining what laws of contract construction to follow, this court will look to Michigan choice of law rules, which require a court to balance the expectations of the parties to a contract with the interests of the states involved to determine which state's law to apply. *See Chrysler Corp. v. Skyline Indus. Servs., Inc.,* 448 Mich. 113, 528 N.W.2d 698, 703 (1995). This rule indicates that in a situation such as the one presented by the instant case Michigan courts would choose to apply their own laws of contract construction, and both parties have assumed that Michigan law is applicable in this case.

■ To begin with, the terms of a provision that is clear and unambiguous must be "taken and understood in [its] plain, ordinary, and popular sense." *Michigan Mut. Ins. Co. v. Dowell,* 204 Mich.App. 81, 514 N.W.2d 185, 188 (1994), *appeal denied,* 447 Mich. 971, 523 N.W.2d 627 (1994); *see also Regents of the Univ. of Mich. v. Employees of Agency Rent–A–Car Hosp. Ass'n,* 122 F.3d 336, 339 (6th Cir.1997). Such provisions are "not open to construction and must be enforced as written." *Cochran v. Ernst & Young,* 758 F.Supp. 1548, 1554 (E.D.Mich. 1991). A contract is ambiguous when its terms are reasonably and fairly susceptible to multiple understandings and meanings. *See Parameter Driven Software, Inc. v. Mas-*

*sachusetts Bay Ins. Co.,* 25 F.3d 332, 336 (6th Cir.1994); *Michigan Mut. Ins.,* 514 N.W.2d at 188. Mere disagreement among parties as to the meaning of such terms does not constitute ambiguity. *See Steinmetz Elec. Contractors Ass'n v. Local Union No. 58 Int'l Bhd. of Elec. Workers, AFL–CIO,* 517 F.Supp. 428, 432 (E.D.Mich.1981). Whether or not ambiguity exists with respect to a contract provision is a question of law for this court to decide. *See id.* It is well-established in Michigan courts that an ambiguous insurance contract provision must be construed against the drafting insurer and in favor of the insured. *See Ray Indus., Inc. v. Liberty Mut. Ins. Co.,* 974 F.2d 754, 759 (6th Cir.1992); *Fire Ins. Exch. v. Diehl,* 450 Mich. 678, 545 N.W.2d 602, 606 (1996). Moreover, the Michigan Supreme Court has stated that it will "strictly construe against an insurer exceptions in an insurance policy that preclude coverage for the general risk." *Vanguard Ins. Co. v. Clarke,* 438 Mich. 463, 475 N.W.2d 48, 52 (1991). On the other hand, contract language should not be given a technical or strained meaning, and courts should not rewrite contract language for the parties. *See Comerica Bank v. Lexington Ins. Co.,* 3 F.3d 939, 943–44 (6th Cir.1993) (citing *Jones v. Farm Bureau Mut. Ins. Co.,* 172 Mich. App. 24, 431 N.W.2d 242 (1988)); *Florida Canada Corp. v. Union Carbide & Carbon Corp.,* 280 F.2d 193, 196 (6th Cir.), *cert. denied,* 364 U.S. 902, 81 S.Ct. 234, 5 L.Ed.2d 194 (1960).

## B. Reinstatement Provision

Equitable Life's first claim on appeal relates to the Policy's reinstatement provision (the "Reinstatement Provision") which states that:

[t]he reinstated policy will *not cover* any *Loss* for which *before the date of reinstatement:* a) a Doctor gave or recommended medical advice or treatment; or b) there were symptoms that would have caused an ordinarily prudent person to seek medical advice or treatment. In all other respects your and our rights will remain the same, subject to [4] any provisions noted on or attached to the reinstated policy.

___

**4.** Equitable Life notes that no provisions were

"noted on or attached to the reinstated Policy,"

J.A. at 190 (Policy at 8) (emphasis added). Equitable Life maintains that the phrase "before the date of reinstatement" should be read as *any time* before the date of reinstatement, while Poe contends that the district court correctly interpreted the provision as referring to a period of time with a distinct starting point—the date the Policy lapsed.[5] In other words, Poe would like this court to conclude that the Reinstatement Provision excludes from coverage only those pre-existing conditions "beginning *after* the [P]olicy has lapsed and before it is reinstated." Appellee's Br. at 13 (emphasis added). Since Poe's hearing condition was already in existence *prior* to the Policy's lapse, under Poe's construction his subsequent disability, which occurred after the Policy was reinstated, would not be excluded from coverage by virtue of the Reinstatement Provision. Realizing that Michigan law favors the insured when insurance contract language is ambiguous, Poe contends that, at the very least, the Reinstatement Provision is ambiguous as to the meaning of "before the date of reinstatement." However, because we conclude below that, under the Policy's incontestability clause, Equitable Life is barred from contesting coverage of Poe's disability under the theory that it is a pre-existing condition, we need not reach this issue regarding the proper construction of the Reinstatement Provision.

## C. Incontestability Clause

The Policy's incontestability clause[6] provides as follows:

TIME LIMIT ON CERTAIN DEFENSES. After this policy has been in force during your lifetime for two years from the Effective Date, misstatements (except for fraudulent misstatements) made by you in the application cannot be used to void this policy or to deny a claim for Loss incurred or. Disability that starts after the end of such two year period. Misstatements (except for fraudulent misstatements) on an application for a policy change that requires evidence of insurability, or any reinstatement of the policy cannot be used to void this policy or to deny a claim after the change or reinstatement has been in effect for two years during your lifetime.

No claim for Loss incurred or Disability that starts after two years from the Effective Date will be reduced or denied on the grounds that a sickness or physical condition *existed* prior to the Effective Date. This will not apply if such sickness or condition was excluded from coverage by name or specific description on the date of Loss.

J.A. at 190 (Policy at 8). Of main relevance to the instant case is the second section dealing with pre-existing conditions (this part hereinafter the "Incontestability Clause"). Equitable Life argues that the Incontestability Clause does not bar Equitable Life from denying Poe's disability claim because this provision only applies to conditions that had not yet manifested themselves prior to the Effective Date. The contractual basis for this theory is typically the coverage provision of the insurance policy, which defines a covered sickness as a sickness or disease that is *first* diagnosed or treated *during* the period the policy is in force. Equitable Life contends that one must make a distinction between the terms "exist" and "manifest" and interpret the term "existed" as used in the Incontestability Clause as not referring to conditions "already manifested."[7]

While the validity of the "first manifest" doctrine is a question of first impression in this circuit, several other courts, including the Fifth and Seventh Circuits, have already addressed this precise issue. There is, however, little agreement among these courts. The Seventh Circuit in *Equitable Life Assurance Soc'y of the U.S. v. Bell,* 27 F.3d 1274

and nothing in the record indicates otherwise. Appellant's Br. at 12.

5. However, we observe that Poe is not consistent. At one point, Poe refers to the date the Policy is issued as the starting point of this period. Appellee's Br. at 24–25. In any case, this detail has no impact on our decision.

6. This clause is required by Michigan law to be included in all insurance policies. *See* MICH. STAT. ANN. § 24.13408 (effective January 1, 1957).

7. Equitable Life is not arguing that the 2–year contestable period begins anew upon reinstatement of a policy.

(7th Cir.1994), concluded that the insurer could not escape liability based upon such a distinction since "the term 'exist' in its ordinary sense refers broadly to a state of being, without reservation as to other qualities, including manifestation." *Id.* at 1281. The Seventh Circuit found it significant that the term "manifest" was used nowhere in the incontestability clause at issue in *Bell,* that the reasonable insured would assume from the language that the clause was referring to all pre-existing conditions regardless of whether a condition had manifested or not, and that at the very least the language was ambiguous and should therefore be construed in favor of the insured. *See id.* at 1281–82. In *Oglesby v. Penn Mut. Life Ins. Co.,* 889 F.Supp. 770 (D.Del.1995), the District Court of Delaware reached the same conclusion, focusing additionally on the fact that the Delaware statute mandating that insurers include an incontestability clause in its policies clearly used the term "existing," not "manifesting"; the district court presumed that the Delaware Supreme Court would not allow an insurance company to "craft a policy more onerous to its insured than that provided by statute." *Id.* at 777–78. Other courts have also rejected the exist/manifest distinction based on their view that to adopt such a distinction would contravene or evade the mandate of the legislature. *See Fischer v. Massachusetts Cas. Ins. Co.,* 458 F.Supp. 939, 944–45 (S.D.N.Y.1978); *Ins. Comm'r of Maryland v. Mut. Life Ins. Co. of New York,* 111 Md.App. 156, 680 A.2d 584, 596 (Md.Ct. Spec.App.1996), *cert. granted,* 344 Md. 115, 685 A.2d 450 (1996).

Various other courts, on the other hand, have found the exist/manifest distinction to be sound. The Fifth Circuit in *Neville v. American Republic Ins. Co.,* 912 F.2d 813 (5th Cir.1990), emphasized the fact that the policy in that case provided coverage for sickness expenses where "sickness" was defined in the policy to mean "'a condition ... first manifested ... while th[at] policy is in force.'" *Id.* at 814 (quoting the policy). Focusing on this limitation, the court in *Neville* concluded that an incontestability clause cannot be interpreted to require coverage of a condition that was never covered by the policy in the first place. *See id.* at 815; *see also*

*National Life & Accident Ins. Co. v. Mixon,* 291 Ala. 467, 282 So.2d 308, 316 (1973). In other words, an incontestability clause cannot be used to expand coverage beyond what risks were assumed by the insurer. Other courts have recognized the exist/manifest distinction for another reason. In *Paul Revere Life Ins. Co. v. Haas,* 137 N.J. 190, 644 A.2d 1098 (1994), the New Jersey Supreme Court found the distinction to be valid because it believed the legislature could not have "intended the incontestability clause to serve as an invitation for fraudulent applications for disability insurance." *Id.* at 1107. The New Jersey Supreme Court reasoned that any misstatement or lack of disclosure about a condition that had already manifested itself must have been made with fraudulent intent.

■ As a federal court sitting in diversity, this court must give the Incontestability Clause the interpretation it believes the Supreme Court of Michigan would. *See Kurczi v. Eli Lilly & Co.,* 113 F.3d 1426, 1429 (6th Cir.1997). While various courts have referred to Equitable Life's position as the "majority" view, *see Mixon,* 282 So.2d at 314, we find the reasoning of the alternative viewpoint more persuasive and join the "growing minority of courts" that have rejected the "first manifest" doctrine. *See Oglesby,* 889 F.Supp. at 776. Although none of the Michigan courts have yet spoken to this precise issue, we find strong support for our decision in a variety of other factors.

Most important, Poe has a strong case whether this court focuses on the plain and ordinary meaning of the term "exist" or concludes that the clause is ambiguous. The language of the Incontestability Clause is quite clear; the language does not suggest that the term "existed" should be read in any way except in its plain, ordinary, and popular sense. Like the Seventh Circuit in *Bell,* we believe that a condition which has manifested can also be said to exist; the category of existing conditions logically includes those conditions that have already manifested themselves. Thus, we believe that the plain meaning of "existed" includes all conditions that were in being, whether manifested or not. Even were we to assume that the meaning of "existed" in the Incontestability

Clause is ambiguous, any such ambiguity would be resolved against the insurer. *See Steinmetz*, 517 F.Supp. at 432. In fact, the Michigan statute mandating the inclusion of an incontestability clause has an "exceptions" provision similar to the one contained in the Indiana statute at issue in *Bell*. The Michigan statute provides that "the insurer may, at its option, substitute for 1 or more of such provisions corresponding provisions of different wording approved by the commissioner which are in each instance not less favorable in any respect to the insured or the beneficiary" and that "[i]f any such provision is in whole or in part ... inconsistent with the coverage provided by a particular form of policy the insurer, with the approval of the commissioner, shall ... modify any inconsistent provision or part of the provision in such manner as to make the provision as contained in the policy consistent with the coverage provided by the policy." *See* MICH. STAT. ANN. § 24.13406. If Equitable Life truly believed the Incontestability Clause was intended by the legislature to pertain only to those conditions that existed but had not yet manifested themselves, it had the opportunity to request permission to clarify the language.

Our rejection of the "first manifest" doctrine is also supported by the context. Equitable Life argues that under early Michigan common law an insurance policy could be voided if the insurer learned that the insured "had" a medical condition at the time of application but failed to state so even if the insured had no knowledge of the condition because it had not yet become evident through symptoms, and that mandating the inclusion of an incontestability clause was "designed to protect the insured [only] from those *innocent* misrepresentations [or failures to disclose] on the application." Appellant's Reply Br. at 1–2. However, in stark contrast to the first section of the Policy's incontestability clause (the inclusion of which was mandated by MICH. STAT. ANN. § 24.13408(a)) regarding misrepresentations on the application, the Incontestability Clause (the inclusion of which was mandated by MICH. STAT. ANN. § 24.13408(b)) dealing with pre-existing conditions does not have an exception for fraud.[8] The first section of the Policy's incontestability clause bars the denial of a claim based on "misstatements (except for fraudulent misstatements) made by you in the application."[9] J.A. at 190 (Policy at 8). The language of the Incontestability Clause, on the other hand, makes no mention that fraud is not protected. In view of this obvious incongruity in the statutorily mandated language, it seems most likely that the Michigan legislature intended the Incontestability Clause to protect even already manifested pre-existing conditions. It is doubtful that the legislature forgot to include language exempting fraud from protection in MICH. STAT. ANN. § 24.13408(b) as illustrated by the Incontestability Clause when it specifically did so in MICH. STAT. ANN. § 24.13408(a) as adopted in the first section of the Policy's incontestability clause. Moreover, we believe the Incontestability Clause is more appropriately viewed not as an endorsement of fraud but as a mechanism offering repose in the nature of a statute of limitations. *Cf. Bogacki v. Great–West Life Assurance Co.*, 253 Mich. 253, 234 N.W. 865, 865–66 (1931) (making a similar comment with respect to another type of incontestability clause contained in a life insurance policy); *Baseheart v. Life Ins. Co. of N. Am.*, 960 F.Supp. 1210, 1215 (W.D.Ky.1997) (same); *see* 18 George J. Couch, COUCH ON INSURANCE § 72:16, at 293–94 (2d ed.1983). After all, the Incontestabili-

---

8. We note that these two provisions concern two very different issues. The first section would allow the insurer to deny coverage if the insured made a "fraudulent misstatement" as opposed to a simple "misstatement," while the second would allow the insurer to deny coverage if an insured's claim filed within two years of the Policy's effective date were based on a pre-existing condition.

9. In fact, the legislature gave insurers the option of providing shelter to fraud under the first part of the incontestability clause, *see* MICH. STAT. ANN. § 24.13408(a), but it did not provide such an option with respect to the second part. *See* MICH. STAT. ANN. § 24.13408(b). Insurers had "an option" in the sense that the statute excluded fraud from shelter but insurers if they wished could make the provision more favorable to insureds by deleting this language. *See id.* § 24.13406. Some companies have opted to delete the fraud language in order to make their policies more attractive to consumers.

ty Clause does not even start to have effect until years after the Policy's Effective Date.

Thus, even assuming the Reinstatement Provision pertains to Poe's disability and thereby excludes his disability from coverage, we conclude that the Incontestability Clause precludes Equitable Life from contesting Poe's claim on such a basis.

### D. Disclosure

As a final attempt at obtaining coverage, Poe claims that since the hearing condition was disclosed to Equitable Life's agent who unintentionally omitted the information when filling out the application,[10] Equitable Life is deemed to have had constructive knowledge of the prior hearing condition. Appellee's Br. at 27–28. Therefore, according to Poe, since the Pre-existing Conditions Exclusion [11] states that "[a] condition that is *disclosed* on the application for this policy and which is not excluded from coverage by name or specific description is *not* a pre-existing condition ... [and] *will be covered* as of the Effective Date of this policy," J.A. at 189 (Policy at 7) (emphasis added), Poe's hearing condition, as an initial matter, cannot even be considered a "pre-existing condition" as defined by the Policy. Acceptance of such an argument would render the first two issues immaterial to the disposition of this appeal in favor of Poe. However, like the first issue with respect to the Reinstatement Provision, we also need not reach this issue because even assuming we disagreed with Poe on this point, we have nevertheless concluded in the previous section that Equitable Life would be barred by virtue of the Incontestability Clause from denying coverage of Poe's hearing disability on the ground that it is a pre-existing condition.

---

10. Whether or not the parties agree about the exact level of disclosure is unclear.

11. The Pre-existing Conditions Exclusion in its entirety reads as follows:
    This policy does not cover any loss which is caused or contributed to by a pre-existing condition except as provided in the general provision "Time Limit On Certain Defenses". A preexisting condition is an Injury or Sickness for which during the 24 months before the Effective Date of this policy: (1) a Doctor gave or recommended medical advice or treatment;

### III. CONCLUSION

We hold that the Michigan courts would reject the "first manifest" doctrine. Because the plain and ordinary language of the Policy's Incontestability Clause bars Equitable Life from contesting coverage of Poe's hearing disability claim on the basis that it is a pre-existing condition, the judgment of the district court is **AFFIRMED**.

or (2) there were symptoms that would have caused an ordinarily prudent person to seek medical advice or treatment.
   A condition that is disclosed on the application for this policy and which is not excluded from coverage by name or specific description is not a pre-existing condition. It will be covered as of the Effective Date of this policy.
J.A. at 189 (Policy at 7).