MAV OF MICHIGAN, INC. a Michigan
corporation Plaintiff,

v.

AMERICAN COUNTRY INSURANCE
CO., Defendants

No. CIV.A.02–CV–72742.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 10, 2003.

Kenneth J. Wrobel, Jr., Bloomfield Hills, MI, for Plaintiff.

Paul H. Johnson, Jr., Heather A. Jefferson, Patrick, Johnson, Southfield, MI, for Defendant.

### MEMORANDUM OPINION & ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HOOD, District Judge.

## I. Introduction

This matter is before the Court on Defendant's Motion for Summary Judgment. Plaintiff alleges that Defendant breached its insurance contract by failing to pay its claim for the loss and/or damage to its business property and for loss of business income. The damage to Plaintiff's property allegedly arose from an occurrence of theft and vandalism on the premises. Defendant alleges that the circumstances giving rise to Plaintiff's business property and business income loss comes within an exclusion in Plaintiff's insurance policy with Defendant; and denial of Plaintiff's claim is appropriate.

## II. Statement of Facts

Plaintiff owned "The Alibi[1]" a tavern business. It was insured by Defendant under a commercial policy of property insurance. Plaintiff is a family owned corporation. The shareholders are Violet Kuretich (president), Sandra Beslach, her daughter, James Kuretich, her son, and Bogdan (Butch) Beslach, her son-in-law (hereinafter the Kuretich family). After approximately one year of operating "The Alibi", the Kuretich family decided to sell its interest in the bar/restaurant facility.[2] Plaintiff sold "The Alibi" business assets to Farmington Leasing, Inc.; the land was sold to LDV Land Development, L.L.C.,; a management agreement was entered into with Bayou Beach Club, Inc. by Plaintiff; and at all times relevant to this lawsuit, each of these corporations was owned by Larry Vande Vrede. *(See Exhibits A, pp. 52–53 & Exhibits B & C of Defendant's Motion for Summary Judgment & Exhibit 2 of Plaintiff's Response to Defendant's Motion for Summary Judgment).*

The business asset and real estate sale agreements were contingent upon the Liquor Control Commission granting a transfer of liquor license from Plaintiff to Larry Vande Vrede's corporations. *(See Exhibit B of Defendant's Motion for Summary Judgment).* During the period of time that the parties were awaiting the approval or denial of the Michigan Liquor Control Commission about the transfer of the liquor license, Larry Vande Vrede through his management company, the Bayou Beach Club, Inc., was to operate "The Alibi" in accordance with the terms of the management agreement and to provide Plaintiff with monthly accountings and activities of the business. *(See Exhibit C of Defendant's Motion for Summary Judgment & Exhibit 2 of Plaintiff's Re-*

*Plaintiff's Response to Defendant's Motion for Summary Judgment).*

1. This business is also referred to in the pleadings as the "Factory Night Club" or "The Factory" which were the names given to the business by new management (Larry Vande Vrede). *(Exhibit F of Defendant's Motion for Summary Judgment & Exhibit 3 of*

2. The Kuretich family owned another tavern business entitled "The Sideline". This business was owned and operated under a different family owned corporation.

*sponse to Defendant's Motion for Summary Judgment).*

■ Despite Plaintiff being kept abreast of "The Alibi's" business activities, control of the business was transferred to Larry Vande Vrede's corporations after the execution of the purchase and management agreements on August 21, 2001 and Plaintiff was no longer involved in the operation and management of the business (Larry Vande Vrede was given keys to the business, security code access and business checking account control[3]). *(See Exhibit A of Defendant's Motion for Summary Judgment, pp. 72–82 & Exhibit D of Defendant's Motion for Summary Judgment, pp. 41–44).* Violet Kuretich also testified that Christine Labadie and Michael Flaherty, on behalf of the Bayou Beach Club, Inc., were to manage and operate "The Alibi."[4] *(Exhibit A, pp. 73–74)*

On December 1, 2001, James Kuretich visited "The Alibi" as a patron to observe the business operations and did not ob-serve any claimed damages at that time. *(Exhibit D of Defendant's Motion for Summary Judgment, pp. 13–16).* On December 5, 2001, when "The Alibi" was closed for business, Bogdan Beslach went to the business to pick up any mail. "Upon his arrival at the business premises he noticed that things did not appear normal." *(Plaintiff's Response to Defendant's Motion for Summary Judgment, n. 5).* On December 6, 2001, the Farmington Hills Police were called to the scene; and the police report reflects the following: (1) no damage to the building's exterior; (2) doors were locked; (3) no signs of forced entry; (4) the locks had been changed; (5) vandalism occurred between December 1, 2001 and December 5, 2001; (6) property was stolen (refrigerators, dishwashers, ice machines); (7) the property and certain fixtures had been vandalized; (pipes and dispenser lines had been cut); (8) Violet Kuretich and Bogdan Beslach informed the police that they had an idea of the identity of the individuals who were re-

**3.** On page 72 of Violet Kuretich's deposition (Exhibit A of Defendant's Motion for Summary Judgment) she admits that Larry Vande Vrede was a "signatory on the checking account." However, her affidavit testimony attached as Exhibit 5, ¶ 9 of Plaintiff's Response to Defendant's Motion for Summary states that "Larry Van[de] Vrede was not a signatory on the business checking account."

"Conclusory allegations and self-serving affidavits, without support in the record, do not create a triable issue of fact" and are insufficient to withstand a motion for summary judgment *Hall v. Bodine Elec. Co.,* 276 F.3d 345, 354 (7th Cir.2002); *Hart v. City of Detroit,* 2001 WL 277980, *4 (E.D.Mich). Therefore, "a party cannot avoid summary judgment through the introduction of self-serving affidavits that contradict prior sworn testimony." *United States ex rel Compton v. Midwest Specialties, Inc.,* 142 F.3d 296, 302–03 (6th Cir.1998); *See also, Kane v. Litow,* 187 F.Supp.2d 846, 851 (E.D.Mich.2002)(plaintiff presented no evidence to support his position other than his own self serving affidavit and his deposition testimony which contradicted the affidavit. Since plaintiff's only evidence (affidavit) was contradicted by his own deposition testimony, the court found that the evidence was insufficient to support plaintiff's claims).

This Court is highly critical of efforts to "patch up" a party's deposition with its own subsequent affidavit. *See, Simmons v. Chicago Bd. of Educ.,* 2000 WL 1720958, 2000 WL 1720958, pg. 1 (N.D.III.); *See also, Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir.1993)

**4.** Violet Kuretich's affidavit testimony, attached as Exhibit 5, ¶ 7 states that Christine Labadie was an employee of Plaintiff's and was paid directly by the Plaintiff. Plaintiff attached as Exhibit 4 a copy of a check to Christine Labadie from "MAV of Michigan, Inc." Although Violet Kuretich's affidavit testimony does not establish a question of fact as to Christine Labadie's employment status (see, fn.3), Exhibit 4 (copy of the check) does raise a genuine issue of fact about which entity Christine Labadie was managing "The Alibi."

sponsible (Bayou Beach Club representatives). *(Exhibit E of Defendant's Motion for Summary Judgment & Exhibit A of Defendant's Motion for Summary Judgment, pp. 91–92, 98).*

The Narrative Report from the Farmington Hills Police Department indicates that this incident is a civil matter. Larry Vande Vrede was interviewed as part of the police investigation and is referred to as a "suspect:"

> The suspect indicated that there was no criminal intent to cause any damage to the R.P.'s[5] business. He stated that after he was contacted by the R.P. and advised that materials were taken that did not belong to him, that he asked the R.P. for a list. The suspect stated that, as of this time, he has never received the list that he requested so that he could check to see (if any items were) inadvertently removed from the business. The suspect further stated that he entered into a business agreement, and was an investor in the bar ... He indicated that there were several offers to buy the bar's equipment and license, but the deals fell through. The suspect stated that they were threatened by the R.P. and her attorney to shut down the business. The suspect stated that it was determined by himself and investing partners that they would shut down the business and remove their equipment ... only property that belonged to him was removed from the business, and none of the R.P.'s property was taken.... He indicated that there was debris and garbage that was left behind, and that the R.P. advised him that she did not want the business cleaned, and that she was submitting the information to her insurance company.

*(Exhibit 3 of Plaintiff's Response to Defendant's Motion for Summary Judgment).*

Within the same Narrative Report, it states that the R.P. told the investigative officer that:

> "[t]here was a fallout between the purchasing party and the seller, and the business agreement was terminated, The R.P. states that the suspect, who she entered into the management agreement with, removed his equipment from this business, causing property damage. The R.P. also states that some property that belongs to her was also removed."

*Id.*

Conducting its own investigation, Defendant obtained a copy of the alarm company records, which track which individuals gained access to "The Factory," the date of their access and the time. *(Exhibit H of Defendant's Motion for Summary Judgment).* The records reflect access to "The Factory" between December 1, 2001 and December 5, 2001 by Christine Labadie and an individual named "Ryan," whose name also appears as gaining entry to the club on several other occasions in November. *Id.*

There is also a letter directed to the Farmington Hills Police Department from attorney William Staugaard, who represents one of the parties involved in this lawsuit. However, the identity of this party has been redacted from the records. *(Exhibit F of Defendant's Motion for Summary Judgment).* The letter states that his client has in his possession a few items that are not his and will return them. *Id.* Attorney Staugaard further states:

> This is a dispute between a landlord, a tenant and a subcontractor hired by the tenant. This is not a criminal matter. However, someone must have suggested to Ms. Kuretich that she would have greater success at recovering for her

5. The term "R.P." is not defined in this report.

claimed loss with her insurance carrier if she could turn the dispute into a criminal matter. I trust that the Farmington Hills Police Department is not intending to be drawn into this civil dispute.

*Id.*

Plaintiff filed a claim with Defendant on March 8, 2002 asserting that it suffered a loss totaling $134,812.96 ($67,373.96 in damaged or lost fixtures and equipment and $68,000.00 for two months' loss of business income). *(Attachment to Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment & Exhibit D of Defendant's Motion for Summary Judgment, pp. 17, 35, 37).* This amount was claimed despite the fact that an amplifier and multi-channel receiver were returned and the previously missing fixtures and equipment were later found on the business premises. *(Exhibit D of Defendant's Motion for Summary Judgment, pp. 17–24, 35, 37).*

Defendant denied coverage for Plaintiff's claim based upon the following language in its insurance policy:

> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>
> h. Dishonest or criminal act by you, any or your partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representative or anyone to whom you entrust the property for any purpose:
>
> (1) Acting alone or in collusion with others; or
>
> (2) Whether or not occurring during the hours of employment.
>
> This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered.
>
> The policy also excluded loss and /or damage resulting from:
>
> i. Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device, or false pretense.

*(Exhibit G of Defendant's Motion for Summary Judgment, Insurance Policy, Causes of Loss—Special Form, pp. 1 and 3 out of 7).* Therefore, it is Defendant's position that since the evidence demonstrates that individuals to whom Plaintiff entrusted the business are the persons responsible for the theft, vandalism, damage and/or loss, this situation comes within the exclusion.

### III.   *Standard of Review*

According to Fed.R.Civ.P. 56(c), when a party moves for summary judgment, "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Cox v. Kentucky Department of Transportation,* 53 F.3d 146, 149–150 (6th Cir.1995).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *Gregg v. Allen–Bradley, Co.,* 801 F.2d 859, 861 (6th Cir.1986). "This burden may be discharged by showing ... that there is an absence of evidence to support the nonmoving parties' case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio*

*Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, if the evidence is insufficient to reasonably support a jury verdict in favor of the nonmoving party, the motion for summary judgment will be granted. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir.1989). Thus, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson, supra,* 477 U.S. at 252, 106 S.Ct. 2505.

Finally, the Sixth Circuit has concluded that, in the "new era" of summary judgments that has evolved from the teachings of the Supreme Court in *Anderson, Celotex,* and *Matsushita,* trial courts have been afforded considerably more discretion in evaluating the weight of the nonmoving party's evidence. *Street, supra,* 886 F.2d at 1480; *Anderson, supra; Celotex, supra; Matsushita Electric Industrial Co., Ltd., supra.* The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the nonmoving party, the motion should be granted. *Id.*

## IV. *Applicable Law & Analysis*

### A. Insurance Contract Construction & Interpretation Generally

▪ In general, interpretation of insurance policies is governed by the same principles used to interpret ordinary contracts. *Farm Bureau Mut. Ins. Co. of Mich. v. Nikkel,* 460 Mich. 558, 596 N.W.2d 915, 919 (1999). Michigan contract law requires us "to look at the policy as a whole, and to give meaning to all of its terms." *Advance Watch Co., Ltd. v. Kemper Nat. Ins. Co.,* 99 F.3d 795, 799 (6th Cir.1996) *(citing, Fresard v. Michigan Millers Mut. Ins. Co.,* 414 Mich. 686, 694–

696, 327 N.W.2d 286 (1982)). A contract provision that is clear and unambiguous must be " 'taken and understood in [its] plain, ordinary, and popular sense.' " *Equitable Life Assurance Soc'y v. Poe,* 143 F.3d 1013, 1016 (6th Cir.1998). Unambiguous contract provisions are not subject to interpretation and must be enforced as written. *Id.* In contrast, contract provisions are considered ambiguous when the "terms are reasonably and fairly susceptible to multiple understandings and meanings." *Id.* Furthermore, courts applying Michigan law are instructed to "refrain from applying a 'technical or strained construction' to words in insurance policies" and all ambiguities should be interpreted in a light most favorable to the insured. *Advance Watch,* 99 F.3d at 800 *(quoting, Hosking v. State Farm Mut. Auto. Ins. Co.,* 198 Mich.App. 632, 633, 499 N.W.2d 436 (1993)).

### B. Application of the Statement of Facts to the Exclusion Cited by Defendant

#### 1. *Property Loss and/or Damage*

▪ The facts as set forth by Plaintiff's representatives in their deposition testimony; in Plaintiff's Sworn Statement in Proof of Loss; in Plaintiff's Complaint; and in its statements, through its representatives, to the Farmington Hills Police Department, indicate that the Kuretich family firmly believed that individuals to whom "The Factory" was entrusted were the persons responsible for the damage and/or loss claimed in its Proof of Loss Statement submitted to Defendant; and that the damage and/or loss was the result of theft and vandalism. The fact that Violet Kuretich states in her affidavit attached to Plaintiff's responsive pleading as Exhibit 5, that she does not know who removed the property from the building or who damaged the interior of the building does not

negate her previous statements taken under oath and before law enforcement officials. *(See n. 3 of this Opinion)*.

Violet Kuretich specifically told the Farmington Hills Police that Larry Vande Vrede was responsible for taking property from the business that did not belong to him and he caused property damage. *(Exhibit 3 of Plaintiff's Response to Defendant's Motion for Summary Judgment & See, n. 3 of this Opinion)*. Ms. Kuretich also confirmed in her deposition testimony what the Farmington Hills Police Department observed, which was that there was no sign of forced entry and that it appeared as though whoever removed the missing items had a key. *(Exhibit A of Defendant's Motion for Summary Judgment, pg. 98)*. In other words, Ms. Kuretich has accused Larry Vande Vrede and/or his representatives of stealing (being dishonest) and causing damage to Plaintiff's business and real estate property.

From this evidence in the record, Plaintiff now has the burden of establishing a genuine issue of fact that Defendant is obligated to provide coverage under this tenor of dishonest and/or criminal circumstances. *Heniser v. Frankenmuth Mutual Ins. Co.*, 449 Mich. 155, 161, n. 6, 534 N.W.2d 502 (1995). Conversely, Defendant has the burden of proving that its exclusion is applicable in this matter. *Id.* In Plaintiff's attempt to meet its burden of proof, it argues a theory as to the cause of the alleged damage and/or loss it has suffered that is completely different from what the existing record reflects.

Plaintiff now argues that there was no theft or vandalism. *(Plaintiff's Response to Defendant's Motion for Summary Judgment, pg. 13)*. Plaintiff's theory is that Larry Vande Vrede and/or his representatives took their own property and not Plaintiff's, and that any damage that was caused to the property resulted from re-modeling and/or renovation work which occurred in late August or early September of 2001. With this new theory in place, there is no evidence of dishonesty or criminal activity because Plaintiff's property was not taken; and there was no malicious damage done to the property, only damage resulting from renovations. Plaintiff asserts that additional proof of the non-criminal and honest nature of the circumstances before the Court is the existence of the police reports which indicate that this is a civil matter as opposed to criminal.

Even though this switch in legal theories gives the Court pause, there is support in the record for this new theory of liability. Within the Narrative Report, attached as Exhibit 3 of Plaintiff's Response to Defendant's Motion for Summary Judgment, there are statements from Larry Vande Vrede which indicate that property was taken from the subject premises, but only property belonging Mr. Vrede. Also, Mr. Kuretich's deposition testimony reveals that he was knowledgeable about some renovations or remodeling that were underway on the business premises, although the record is not clear as to when these renovations took place.. *(Exhibit D, pp. 24–25)*. A question of fact is therefore established relative to the cause or origin of Plaintiff's loss in this matter.

However, despite Plaintiff's alternative theory liability the Court finds that Plaintiff's claim of loss falls under an exclusion of Plaintiff's insurance policy:

> We will not pay for loss or damage caused by or resulting from any of the following ...
>
> c. Faulty, inadequate or defective ...:
>
> (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
>
> (3) Materials used in repair construction, renovation or remodeling;

(4) Maintenance of part or all of any property on or off the described premises.

*(Exhibit G of Defendant's Motion for Summary Judgment, Insurance Policy, Causes of Loss—Special Form, pg. 3 of 7).* Even if the property damage was caused by remodeling and/or renovations, it is excluded under Plaintiff's policy; and coverage would properly be denied.

### 2. Business Income Loss

■ Plaintiff claims that the circumstances giving rise to the claim before the Court resulted in the shut down of "The Factory" for two months, which resulted in an income loss. However, the record reflects otherwise. Within the Narrative Report, Mr. Vrede states that because he and his partners/investors were being threatened by Plaintiff's representatives, that Mr. Vrede and his investing partners shut down the business and removed their equipment. *(Exhibit 3 of Plaintiff's Response to Defendant' Motion for Summary Judgment).* Plaintiff argues within the text of its responsive pleading that the reason the business shut down was due to disputed contractual issues. *(Plaintiff's Response to Defendant's Motion for Summary Judgment, pg. 14).* There is no evidence in the record that the business was shut down or that business was suspended because of a direct physical loss or damage to the subject premises. It is only under those circumstances that Defendant would provide coverage for such business income loss:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by the direct physical loss or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage

must be caused by or result from a Covered Cause of Loss.

*(Exhibit G of Defendant's Motion for Summary Judgment, Insurance Policy, Business Income (and Extra Expense) Coverage Form, pg. 1 of 8, subparagraph A).*

Since Plaintiff has failed to establish a genuine issue of material fact that the basis for shutting down the business does not come within the exclusion, the Court agrees with Defendant's decision to deny coverage for this claim.

### 3. Penalty Interest

Because the Court finds that a judgment in Plaintiff's favor is not warranted, the Court likewise finds that the imposition of penalty interest pursuant to M.C.L. § § 500.2006 is similarly inappropriate. Since the imposition of a judgment is required under the Trade Practices Act in order to receive penalty interest on a claim that is reasonably in dispute, and the Court does not agree that there is a claim reasonably in dispute for reasons set forth above, the Court finds in Defendant's favor as to this issue as well. Plaintiff's request for penalty interest is denied.

### V. Conclusion

For the reasons set forth above, Defendant's Motion for Summary Judgment is GRANTED.

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment [Docket No: 9–1, filed February 28, 2003] is **GRANTED**; and this matter is dismissed with prejudice.