**Lora F. SNYDER, Plaintiff,**

v.

**FLEETWOOD RV, INC., et al., Defendants.**

Case No. 2:13–cv–1019.

United States District Court, S.D. Ohio, Eastern Division.

Filed Oct. 1, 2014.

Robert James D'Anniballe, Jr., Pietragallo Gordon Alfano Bosick & Raspanti, LLP, Steubenville, OH, for Plaintiff.

Edward G. Hubbard, Columbus, OH, for Defendants.

### OPINION AND ORDER

TERENCE P. KEMP, United States Magistrate Judge.

Plaintiff Lora Snyder brought this action against Defendants Fleetwood RV, Inc., and Spartan Chassis, Inc., alleging that they are responsible for defects and nonconformities in a motor home which Ms. Snyder acquired. In the course of discovery, Defendant Spartan Chassis, Inc. ("Spartan") subpoenaed Ms. Snyder's husband, Don Snyder, who is not a party to this action, seeking certain documents. Ms. Snyder and Mr. Snyder filed a motion to quash the subpoena and for related attorney fees (Doc. 20). The motion has been fully briefed. For the following reasons, the motion will be granted in part and denied in part.

### I. Background

On July 24, 2014, Spartan served a subpoena on Mr. Snyder to produce documents, information, or objects or to permit inspection of premises in a civil action. The subpoena sought seven categories of documents. Mr. and Ms. Snyder objected to producing the following five categories of documents:

1. Individual tax documents from 2010 to the present;

3. Any written or electronic correspondence or notes related to American Heritage Model 45BT VIN 4VZUIE98BC074290 including correspondence or notes between Don Snyder and Attorney Robert D'Anniballe;

5. Any written or electronic correspondence or notes related to Fleetwood RV Model K3 VIN 4VZUIE93CC075574 including correspondence or notes between Don Snyder and Attorney Robert D'Anniballe;

6. Copy of notes taken by Don Snyder during the deposition of John Mestlin on June 25, 2014, which were separated from a yellow legal pad and preserved by the Court Reporter;

7. Copy of all notes maintained in the yellow legal pad in the possession of Don Snyder during the deposition of John Mestlin on June 25, 2014, which Mr. Snyder refused to provide and further refused to preserve with the court reporter.

(Doc. 20, Exh. A). The Snyders claim the documents described in categories 3, 5, and 6 are protected by the attorney-client privilege or the work product doctrine. They objected to producing documents responsive to categories 1 and 7 as unduly burdensome and not reasonably calculated to lead to the discovery or admissible evidence. On August 6, 2014, the Snyders filed a motion to quash that subpoena, repeating these objections in their motion.

## II. *The Motion to Quash*

Motions to quash are governed by Rule 45(d)(3), which provides, *inter alia*, that a court "must quash or modify a subpoena that . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." In addition, while the Rule itself does not list irrelevance or overbreadth as reasons for granting a motion to quash, "[c]ourts . . . have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D.Ohio 2011), *quoting*

*Barrington v. Mortage IT, Inc.*, 2007 WL 4370647 (S.D.Fla. Dec. 10, 2007); *see also* Advisory Committee Note to the 1970 Amendment of Rule 45(d)(1) (the 1970 amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules."); 9A Charles A. Wright and Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2459 (3d ed.) ("Although a subpoena may be quashed if it calls for clearly irrelevant matter, the district judge need not pass on the admissibility of the documents sought in advance of trial nor quash a subpoena demanding their production if there is any ground on which they might be relevant. . . . This discovery relevancy standard has been applied to subpoenas in many cases") (citations omitted).

Rule 45 does not say who has the burden of proof with respect to the facts supporting a motion to quash. The case law generally states that the burden is on the party who filed the motion. However, some cases make an exception when relevancy is not apparent on the face of the request:

> The party seeking to quash a subpoena bears the ultimate burden of proof. *See, e.g., White Mule Co. v. ATC Leasing Co. LLC*, 2008 WL 2680273, at *4 (N.D.Ohio June 25, 2008). If the discovery sought appears "relevant on its face, the party resisting the discovery has the burden to establish the lack of relevance" but "when relevancy is not apparent on the face of the request, the party seeking the discovery has the burden to show the relevancy of the request." *Transcor, Inc. [v. Furney Charters, Inc.]*, 212 F.R.D. [588] at 591 [ (D.Kan.2003) ].

*Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D.Ohio 2011).

The Snyders first argue that the documents sought by subpoena categories 3, 5, and 6 are protected by the attorney-client privilege. Rule 501 of the Federal Rules of Evidence provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed.R.Evid. 501. State law supplies the rule of decision in diversity ac-

tions such as the action before the Court. *See, e.g., Equitable Life Assur. Soc. of U.S. v. Poe,* 143 F.3d 1013, 1016 (6th Cir.1998) ("Pursuant to the well-known doctrine of *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a federal judge sitting in a diversity action must apply the same substantive law that would be applied if the action had been brought in a state court of the jurisdiction in which the federal court is located"); *see also Corrigan v. U.S. Steel Corp.,* 478 F.3d 718, 723 (6th Cir.2007) (same). Therefore, state privilege law applies here.

▮ Both the Snyders and Spartan cite to Ohio law and federal law regarding the attorney-client privilege, but neither cites to any other State's law. The Complaint alleges that the sale of the motor home at issue took place in Ohio, that Ms. Snyder resides in Ohio, and that the motor home at issue is in Ohio. The Complaint also pleads causes of action under Ohio statutes. There is no evidence before the Court regarding any choice of law provisions in any contract. Accordingly, the Court will analyze the question of privilege under Ohio law, which is summarized here:

> "The privilege of a witness, person, state or political subdivision thereof shall be governed by statute enacted by the General Assembly or by principles of common law as interpreted by the courts of this state in the light of reason and experience." [Ohio] Evid. R. 501.

> In Ohio, the attorney-client privilege is governed by statute, R.C. 2317.02(A), and in cases that are not addressed in R.C. 2317.02(A), by common law. *See, e.g.,* R.C. 2317.02(A), which provides that in general, an attorney shall not testify "concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client"; ...

> ...

> Under the attorney-client privilege, "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from

disclosure by himself or by the legal adviser, (8) unless the protection is waived." *Reed v. Baxter* (C.A.6, 1998), 134 F.3d 351, 355–356; *Perfection Corp. v. Travelers Cas. & Sur. Co.,* 153 Ohio App.3d 28, 2003–Ohio–2750, 790 N.E.2d 817, ¶ 12.

*State ex rel. Leslie v. Ohio Hous. Fin. Agency,* 105 Ohio St.3d 261, 264–65, 824 N.E.2d 990 (2005). The burden of showing that testimony or documents should be excluded based on the attorney-client privilege rest upon the party asserting the privilege. *See, e.g., Peyko v. Frederick,* 25 Ohio St.3d 164, 166, 495 N.E.2d 918 (1986).

The Snyders cite to Ohio's statutory definition of "client" to argue that all the communications between Mr. Snyder and his wife's attorney were really indirect communications between Ms. Snyder and her attorney. O.R.C. 2317.021 defines "client" as a person or entity "that, directly or through any representative, consults an attorney for the purpose of retaining the attorney or securing legal service or advice from the attorney in the attorney's professional capacity ... and who communicates, either directly or through an agent, employee, or other representative, with such attorney; and includes an incompetent person whose guardian so consults the attorney in behalf of the incompetent person."

The Snyders then cite to *State v. Shipley,* 94 Ohio App.3d 771, 776, 641 N.E.2d 822 (1994) for the proposition that a close relative can be an agent or representative of the client. In *Shipley,* the court concluded that the client's communications to his attorney were privileged and that the privilege was not waived by his brother's presence for some of the communications. *Shipley* does not address communications made by the brother to the attorney, but merely whether the brother's presence waived the privilege as to the client's communications with the attorney. The *Shipley* decision cited to the fourth paragraph of the syllabus of *Bowers v. State,* 29 Ohio St. 542 (1876), which stated that admissions made to an attorney by a client were "not deprived of their privileged character by the fact that her mother was present, and participated in the consultation; the presence and aid of the mother being

necessary and proper in such a case, she should be regarded as the mere agent of the daughter."

While *Shipley* interpreted *Bowers* rather liberally, a more recent Ohio Court of Appeals decision interpreted the *Bowers* decision more narrowly, declining to treat a mother as her son's agent for purposes of confidentiality when the son was not a minor. *State v. Whitaker*, 1998 WL 704348, *2 (Warren Co.App. Oct. 12, 1998) ("Because appellant was not a minor, such cases [as *Bowers* ] do not apply to the present facts"). This narrow interpretation seems to fit with the language of the *Bowers* decision, which specifically noted the client's youth (she was under 18) and the delicate nature of the communications as making the mother's presence and participation "appropriate and necessary." *Bowers,* 29 Ohio St. at 546.

■ Regardless of which interpretation of *Bowers* is correct, the Snyders have not provided evidence to demonstrate that any of the communications at issue should be shielded by the attorney-client privilege. First, there is no evidence that any of the documents sought in categories 3 or 5 of the subpoena (written or electronic correspondence or notes related to certain models including correspondence or notes between Mr. Snyder and his wife's attorney) were communications made indirectly by Ms. Snyder through Mr. Snyder as her representative or agent. To the contrary, the unsupported allegations in the memorandum in support of the motion to quash suggest that Mr. Snyder has "unique and specific knowledge of the subject matter at issue," in part because he owns a tire store that performs repairs and alignments on vehicles and is a licenced commercial truck driver with automotive and mechanical expertise. This suggests that he has specialized knowledge that his wife does not have and is communicating more as a consultant than as one who is conveying communications from his wife to her attorney. This is further supported by the memorandum's assertion that, though not a party to the lawsuit, Mr. Snyder is himself an "interested party in this lawsuit," which indicates that his communications may be expressing his own concerns and interests. To the ex-

tent that the statutory definition of "client" can be read to extend the attorney-client privilege to communications by a client that are made through a representative, that definition still requires the client to be the source of the communications.

While the memorandum goes on to say that "[b]ecause Mr. Snyder possesses this knowledge, Plaintiff often consults with him on these matters related to this case, and Mr. Snyder often communicates on Plaintiff's behalf as her representative and agent in this and related matters," that representation places Mr. Snyder in the role of an expert consultant or co-client, neither of which is claimed as a basis for the privilege asserted here. Furthermore, neither Ms. Snyder nor Mr. Snyder has provided an affidavit or other evidence which supports these assertions. Absent any evidence, the Court cannot conclude that the communications at issue were attorney-client communications initiated by Ms. Snyder and made through Mr. Snyder. The same holds true for the sixth category of documents sought in the subpoena, at least to the extent that Mr. Snyder claims they are protected by the attorney-client privilege.

The Snyders also assert work product protection for documents responsive to the sixth category of documents sought in the subpoena. That request seeks the "notes taken by Don Snyder during the deposition of John Mestlin on June 25, 2014, which were separated from a yellow legal pad and preserved by the Court Reporter." The Snyders argue that the notes were prepared in anticipation of litigation and are protected by the work-product doctrine.

The Federal Rules of Civil Procedure and federal case law set forth the applicable law regarding work-product doctrine. *See, e.g., In re Powerhouse Licensing, LLC,* 441 F.3d 467, 472 (6th Cir.2006) ("In a diversity case, the court applies federal law to resolve work product claims and state law to resolve attorney-client claims") (citations omitted). Rule 26(b)(3)(A) states that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor,

insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." The Court of Appeals "has explained that 'a party may satisfy its burden of showing anticipation of litigation "in any of the traditional ways in which proof is produced in pretrial proceedings such as affidavits made on personal knowledge, depositions, or answers to interrogatories," and that the showing "can be opposed or controverted in the same manner." ' " *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 381 (6th Cir.2009) (citation omitted). *Biegas* also stated that an affidavit claiming work product protection must be specific and detailed, and "application of the privilege will be rejected where the only basis for the claim is an affidavit containing conclusory statement[s]." *Id.* at 381 (internal quotation marks and citation omitted).

█ Here Mr. Snyder's affidavit states that he took minimal notes concerning the subject-matter of the deposition and the related litigation. (Doc. 22 at 8, ¶ 1). While his affidavit does speak to the subject matter of the notes, which suggests that the notes are relevant, the affidavit does not indicate that the notes were prepared in anticipation of trial as opposed to some other purpose, nor does his affidavit say that when he took the notes, he was acting on behalf of either his wife or her counsel. As a result, the Snyders have failed to meet their burden to demonstrate that the notes in question are work product.

Mr. Snyder next argues that the documents sought by subpoena categories 1 and 7 are unduly burdensome and seek information that is not relevant to this case. The Court agrees that these two categories of documents are not relevant on their face and that Spartan has failed to establish their relevance.

█ The request for Mr. Snyder's individual tax documents from 2010 to the present is not relevant on its face because he is not a party to the action and the damages sought by Ms. Snyder do not relate to his earnings or anything else that would be reflected in his tax documents. Spartan argues, however, that Mr. Snyder's status as Ms. Snyder's husband makes his financial history and status relevant and that "[i]n other cases where the alleged value [of damages] in question was as substantial as those claimed in this case, plaintiffs have been known to manufacture claims of warranty repair in an effort to get out from underwater with a vehicle purchase they cannot afford." (Doc. 21 at 7). To support this fairly speculative argument, Spartan points to a statement in which Mr. Snyder said, "I'm not trying to get warranty I'm just trying to figure out some way, I've had $800,000 tied up for three years and I've not been able to use it." (Doc. 21 at 11). That statement alone does not persuade the Court that there is any legitimate basis for discovering Mr. Snyder's tax returns or related documents. While it is true that Mr. Snyder has provided no evidence of undue burden, the Court finds that this portion the subpoena falls outside the scope of Rule 26 on its face.

Spartan also requests Mr. Snyder's yellow notepad, excluding the notes taken at the deposition of John Mestlin, which were already removed from the notepad and are being preserved with the court reporter. That request is not limited in subject matter, but merely seeks other notes that happened to be in the same notepad. Mr. Snyder's affidavit states that the notepad contained other notes that were not related to the litigation at issue. To the extent that there are relevant notes or communications in the yellow notepad which were not given to the court reporter, Spartan must seek them through a properly-tailored request. In fact, to the extent that the yellow notepad includes notes relevant to this case, Mr. Snyder may already be obligated to produce them as a result of one of Spartan's other requests. However, the request, as phrased, is simply not within the scope of Rule 26.

█ Last, the Snyders seek attorney's fees, costs and expenses pursuant to Rule 26(g)(3) of the Federal Rules of Civil Procedure. In light of the Court's findings that

most of the categories of documents were within the scope of the Rules and that the categories that were not within the scope were supported by arguments that were not completely frivolous, the Court finds that sanctions are not appropriate.

### III. *Conclusion*

For the foregoing reasons, the motion to quash is granted in part and denied in part. It is granted as to categories 1 and 7 of the subpoena. It is denied as to the remainder of the requests. The documents responsive to those requests shall be produced within fourteen days. The Snyders' request for attorney's fees is denied.